[No. 38600-3-II.   Division Two.   August 9, 2011.]

THE STATE OF WASHINGTON, *Respondent*, v. GARY D. MEREDITH, *Appellant*.

706

*James E. Lobsenz* (of *Carney Badley Spellman*), for appellant.

*Mark E. Lindquist, Prosecuting Attorney,* and *Kathleen Proctor, Deputy,* for respondent.

¶1 PENOYAR, C.J. — Gary D. Meredith appeals his convictions for second degree child rape and communicating with a minor for immoral purposes. His primary contention is that the prosecutor's peremptory challenge of the sole African American venire member constituted a prima facie case of purposeful discrimination in violation of *Batson v. Kentucky*, 476 U.S. 79, 106 S. Ct. 1712, 90 L. Ed. 2d 69 (1986). In the published part of this opinion, we review the facts relevant to his *Batson* claim and hold that a defendant does not establish a prima facie case of purposeful discrimination under *Batson* by showing only that the prosecutor peremptorily challenged the sole venire member of a cognizable racial group that is different from the defendant's racial group. We also conclude that Meredith failed to establish a prima facie case of purposeful discrimination here.

¶2 Meredith also argues that (1) the trial court violated his rights to confrontation and cross-examination, (2) insufficient evidence supports his communication with a minor for immoral purposes conviction, and (3) the trial court improperly prohibited him from arguing about the absence of DNA[1] evidence during closing argument. In the unpublished portion of this opinion, we discuss the facts relevant to these claims, each of which we reject. Accordingly, we affirm on both counts.

## PUBLISHED FACTS

¶3 In 1996, Meredith was preparing to stand trial on one count of second degree child rape[2] and one count of communication with a minor for immoral purposes.[3] During

---

[1] Deoxyribonucleic acid.

[2] RCW 9A.44.076.

[3] Former RCW 9.68A.090 (1989).

voir dire, the prosecutor peremptorily challenged juror 4, the sole African American on the venire. Meredith, who is Caucasian, objected, arguing that the State did not give a basis for challenging juror 4 and, thus, the "only belief can be that she was removed because of her minority status." 3 Report of Proceedings (RP) at 107.

¶4 The prosecutor responded that Meredith had failed to meet his burden under *Batson* to show purposeful discrimination because he failed to present any evidence for this claim other than that juror 4 was African American. Additionally, the prosecutor maintained that he did not strike other racial minorities on the venire, including one woman who appeared to be of "Southern European descent . . . or perhaps even Middle Eastern." 3 RP at 109. He observed that the juror questionnaires did not include information on the venire members' race, "so it's difficult to know who is and is not a racial minority." 3 RP at 109. The prosecutor further argued that as the "other half of the *Batson* challenge" requires, Meredith failed to meet his burden of proof that he was of the same race as the excluded venire member. 3 RP at 109.

¶5 The trial court agreed with the prosecutor that removing the sole African American venire member was insufficient to establish a prima facie case of purposeful discrimination under *Batson*:

> At this point in time, the Court finds that the burden of proof is on the Defendant to demonstrate the use of a peremptory challenge based on a discriminatory reason. Defense has failed in that proof, one, as to whether or not the Prosecuting Attorney's Office here in Pierce County exercises challenges in a racially biased or discriminatory manner, or two, that [the] prosecutor in this case has done so. There is no evidence of racial bias in challenging Juror No. 4 on either of those two bas[es].
>
> The fact that there has been an exclusion of a single black juror is insufficient to establish a prima facie case pattern of

exclusion. This is under *Batson* and under *State v. Ashcroft*,[4] even though from appearances she was the only black or African American juror on the panel. There being no other evidence, the Court denies the motion.

3 RP at 111. Accordingly, the trial court did not require the prosecutor to provide a race-neutral reason for challenging juror 4.

¶6 The jury convicted Meredith on both counts. He appeals.

## PUBLISHED ANALYSIS

### BATSON CHALLENGE

¶7 We must decide whether Meredith established a prima facie case of purposeful discrimination under *Batson* by showing that the prosecutor removed the only African American venire member. We hold that he did not.

■ ■ ¶8 In *Batson*, the United States Supreme Court recognized that the Fourteenth Amendment's equal protection clause requires defendants to be "tried by a jury whose members are selected pursuant to nondiscriminatory criteria." 476 U.S. at 85-86 (citing *Martin v. Texas*, 200 U.S. 316, 321, 26 S. Ct. 338, 50 L. Ed. 497 (1906)). *Batson* articulated a three-part analysis to determine whether discriminatory criteria were used to peremptorily challenge a venire member. 476 U.S. at 96-98. First, the defendant must establish a prima facie case of purposeful discrimination. *Batson*, 476 U.S. at 96-97. To establish a prima facie case, the defendant must provide evidence of any relevant circumstances that raise an inference that a peremptory challenge was used to exclude a venire member from the jury on account of his or her race. *Batson*, 476 U.S. at 96-97. Second, if the defendant establishes this prima facie case, the burden shifts to the prosecutor to articulate a race-neutral explanation for chal-

---

[4] The trial court may have been referring to *State v. Ashcraft*, 71 Wn. App. 444, 859 P.2d 60 (1993).

lenging the venire member. *Batson*, 476 U.S. at 97. Finally, the trial court must determine whether the defendant has established purposeful discrimination. *Batson*, 476 U.S. at 98.

■ ¶9 "In reviewing a trial court's ruling on a *Batson* challenge, '[t]he determination of the trial judge is accorded great deference on appeal, and will be upheld unless clearly erroneous.' " *State v. Hicks*, 163 Wn.2d 477, 486, 181 P.3d 831 (2008) (alteration in original) (internal quotation marks omitted) (quoting *State v. Luvene*, 127 Wn.2d 690, 699, 903 P.2d 960 (1995)).

¶10 Meredith argues that our Supreme Court's recent decision in *State v. Rhone*, 168 Wn.2d 645, 229 P.3d 752, *cert. denied*, 131 S. Ct. 522 (2010), created a bright-line rule in Washington that a defendant establishes a prima facie case of purposeful discrimination when the record shows that the prosecutor exercised a peremptory challenge against the sole remaining venire member of a constitutionally cognizable racial group. Because the prosecutor challenged the only African American venire member in the present case, Meredith concludes that he established a prima facie case of purposeful discrimination. He asserts that the trial court erred in determining otherwise, and he asks us to reverse his convictions and remand for a new trial.

¶11 In *Rhone*, there were two African Americans in the venire. 168 Wn.2d at 648. One was challenged for cause per the parties' agreement, and the other was removed by one of the prosecutor's peremptory challenges without an objection by the defense. *Rhone*, 168 Wn.2d at 648. After the jury was sworn in, the defendant, an African American, raised a *Batson* challenge. *Rhone*, 168 Wn.2d at 648-49. The trial court ruled that the defendant had failed to establish a prima facie case of purposeful discrimination. *Rhone*, 168 Wn.2d at 650.

¶12 In *Rhone*'s lead opinion, four justices[5] rejected a bright-line rule that a prima facie case of discrimination is always established whenever the prosecutor peremptorily challenges a venire member who is a member of a racially cognizable group. 168 Wn.2d at 652-53. They noted that *Batson* involved a three-part analysis, in which the first part directs a trial court "to determine whether 'something more' exists than a peremptory challenge of a member of a racially cognizable group." *Rhone*, 168 Wn.2d at 653. Consequently, they explained:

> Adopting a bright-line rule would negate this first part of the analysis and require a prosecutor to provide an explanation every time a member of a racially cognizable group is peremptorily challenged. Such a rule is beyond the intended scope of *Batson*, transforming a shield against discrimination into a sword cutting against the purpose of a peremptory challenge.

*Rhone*, 168 Wn.2d at 653-54.

¶13 Chief Justice Madsen wrote a separate concurrence, stating, "I agree with the lead opinion in this case. However, going forward, I agree with the rule advocated by the dissent." *Rhone*, 168 Wn.2d at 658 (Madsen, C.J, concurring).

¶14 The dissent, which Justice Alexander[6] authored, advocated "a bright line rule that a prima facie case of discrimination is established under *Batson* when the sole remaining venire member of the defendant's constitutionally cognizable racial group or the last remaining minority member of the venire is peremptorily challenged." *Rhone*, 168 Wn.2d at 661 (Alexander, J., dissenting). The dissenters recognized that under an earlier precedent,[7] a trial court has discretion to find a prima facie case of purposeful discrimination where the only venire member from a con-

---

[5] Justices Charles Johnson (writing), Susan Owens, James Johnson, and Debra Stephens.

[6] Justices Richard Sanders, Tom Chambers, and Mary Fairhurst joined.

[7] *State v. Thomas*, 166 Wn.2d 380, 397, 208 P.3d 1107 (2009).

stitutionally cognizable group is peremptorily challenged; however, the dissenters were persuaded to depart from this precedent because "the benefits of [a bright-line rule] far outweigh the State's minimal burden to provide a race-neutral explanation for its challenge during venire." *Rhone*, 168 Wn.2d at 661 (Alexander, J., dissenting). Some of these benefits include ensuring an adequate record for appellate review, accounting for the realities of the demographic composition of Washington venires, and effectuating the Washington Constitution's elevated protection of the right to a fair jury trial. *Rhone*, 168 Wn.2d at 661 (Alexander, J., dissenting).

■ ¶15 *Rhone*'s future is uncertain now that a new justice has joined our Supreme Court. Other *Batson* cases in the future will present different facts, different challenges, and different results. In any case, we need not consider the reach of the bright-line rule advocated by *Rhone*'s minority/possible future majority because the record here is inadequately developed to tell us with any certainty whether this case even falls within that rule.

¶16 First, although the challenged venire member in this case was African American, Meredith is not. Thus, under the first prong of the minority/possible future majority's bright-line rule, Meredith's claim falls short because the peremptorily challenged juror was not a "member of the *defendant's* constitutionally cognizable racial group." *Rhone*, 168 Wn.2d at 661 (Alexander, J., dissenting) (emphasis added). And under the minority/possible future majority's second prong, Meredith fails again because the record does not clarify whether juror 4 was, in fact, the last remaining minority member of the venire. *See Rhone*, 168 Wn.2d at 661 (Alexander, J., dissenting). For instance, the prosecutor pointed out that at least one of the remaining venire members appeared to be a racial minority.

■ ¶17 Turning to *Rhone*'s majority/possible future minority opinion, we conclude that it also does not support Meredith's claim that he established a prima facie case of

purposeful discrimination. Under that opinion's analysis, to determine whether a defendant has established a prima facie claim of purposeful discrimination, the trial court must look to see whether the record reflects " 'something more' " than "a peremptory challenge against a member of a racially cognizable group." *Rhone*, 168 Wn.2d at 656. Some factors to consider in determining whether there was purposeful discrimination include:

> (1) [S]triking a group of otherwise heterogeneous venire members who have race as their only common characteristic, (2) exercising a disproportionate use of strikes against a group, (3) the level of a group's representation in the venire as compared to the jury, (4) the race of the defendant and the victim, (5) past discriminatory use of peremptory challenges by the prosecuting attorney, (6) the type and manner of the prosecuting attorney's questions during voir dire, (7) disparate impact of using all or most of the challenges to remove minorities from the jury, and (8) similarities between those individuals who remain on the jury and those who have been struck.

*Rhone*, 168 Wn.2d at 656.

¶18 Although this is not an exhaustive list of factors that a court may consider in deciding whether "something more" exists, Meredith did not argue to the trial court that any of these factors were present. Instead, his trial counsel argued to the trial court that juror 4's answers "were beneficial to both the State and to the defense under some circumstances"[8] and that nothing in her answers indicated "that she was in any way confused, evasive or said anything that might lead one to believe that there would be a proper basis for removing the juror." 3 RP at 107, 110. We hold that

---

[8] In his motion for reconsideration, Meredith asserts that his trial counsel's argument that juror 4 "gave . . . answers that were beneficial to both the State and to the defense under some circumstances" was, in essence, an argument that the eighth factor in *Rhone*'s nonexclusive list—"similarities between those individuals who remain on the jury and those who have been struck"—was present. Mot. for Recons. at 6-7 (quoting 3 RP at 110); *Rhone*, 168 Wn.2d at 656. We disagree with this characterization. Meredith's "beneficial answers" argument referred only to juror 4's responses and made no reference whatsoever to venire members who were either selected for the jury or peremptorily challenged.

these circumstances do not amount to "something more" under *Rhone*.

¶19 Additionally, on appeal, Meredith asserts that the prosecutor's comment that a woman of "Southern European descent . . . or perhaps even Middle Eastern" remained on the panel suggested that "race was on [the prosecutor's] mind at the time the defense questioned his exercise of a peremptory challenge against [juror 4]." 3 RP at 109; Appellant's Br. at 20. We hold that this comment, whether considered in isolation or together with Meredith's arguments in the previous paragraph, also does not amount to "something more" under *Rhone*. The prosecutor made this comment in response to an argument by Meredith's counsel that "[t]he only belief can be that [juror 4] was removed because of her minority status." III RP at 107. It does not raise an inference that the prosecutor removed juror 4 from the venire on account of her race.

¶20 Without "something more" than "a peremptory challenge against a member of a racially cognizable group," a court will not ascribe discriminatory motives to the challenge. *Rhone*, 168 Wn.2d at 656. We recognize that there are a host of other factors, any one of which may determine a trial attorney's choice to remove a venire member, including the tone and inflections in a venire member's voice, as well as nonverbal cues, including eye contact, body gestures, reactions to other venire members' responses, et cetera. In sum, the record does not reflect any discriminatory motive in removing juror 4, nor does it exclude the existence of many potential nondiscriminatory motives. Thus, we hold that the trial court did not err by concluding that Meredith did not meet his burden to show a prima facie case of purposeful discrimination.

¶21 Finally, we agree with the dissent that a defendant may rely on " '[a] single invidiously discriminatory governmental act' " to establish a prima facie case of purposeful discrimination. Dissent at 716 (internal quotation marks omitted) (quoting *Batson*, 476 U.S. at 95). We

agree, therefore, that the trial court applied the wrong legal standard when it concluded that Meredith had to demonstrate "a pattern of exclusion" in order to establish a prima facie case of purposeful discrimination. 3 RP at 111. But this error does not warrant reversal of Meredith's convictions because as we explain in the preceding paragraphs, Meredith failed to establish a prima facie case of purposeful discrimination under both the *Rhone* majority's "something more" standard and the *Rhone* minority's bright-line rule. Accordingly, although the trial court applied an incorrect legal standard, its determination with regard to Meredith's *Batson* challenge was not clearly erroneous.[9]

¶22 A majority of the panel having determined that only the foregoing portion of this opinion will be printed in the Washington Appellate Reports and that the remainder shall be filed for public record in accordance with RCW 2.06.040, it is so ordered.

HUNT, J., concurs.

¶23 JOHANSON, J. (dissenting) — I respectfully dissent for two reasons. First, *Batson v. Kentucky*, 476 U.S. 79, 106 S. Ct. 1712, 90 L. Ed. 2d 69 (1986), does not require a pattern of racial discrimination. And, second, I agree with Justice Alexander's conclusion in his dissent in *State v. Rhone*, 168 Wn.2d 645, 659, 229 P.3d 752, *cert. denied*, 131 S. Ct. 522 (2010) (Alexander, J., dissenting), that there should be a bright-line rule "that a defendant establishes a prima facie case of discrimination when, as here, the record shows that the State exercised a peremptory challenge against the sole remaining venire member" of a specific racial group.

---

[9] We also reject Meredith's argument that the trial court violated his article I, section 22 right to an appeal under the state constitution when it did not require the prosecutor to explain his reason for peremptorily challenging juror 4. Meredith had no legal right to this explanation because he did not meet his initial burden to establish a prima facie case of purposeful discrimination. *See Rhone*, 168 Wn.2d at 651 ("*[I]f a prima facie case is established*, the burden shifts to the prosecutor to come forward with a race-neutral explanation for challenging the venire member." (emphasis added)).

¶24 As to my first reason, the record shows that the trial court clearly applied the wrong standard articulated in *Batson*, 476 U.S. at 95. Under *Batson*, " 'a consistent pattern of official racial discrimination' is not 'a necessary predicate to a violation of the Equal Protection Clause. A single invidiously discriminatory governmental act' is not 'immunized by the absence of such discrimination in the making of other comparable decisions.' " *Batson*, 476 U.S. at 95 (quoting *Vill. of Arlington Heights v. Metro. Hous. Dev. Corp.*, 429 U.S. 252, 266 n.14, 97 S. Ct. 555, 50 L. Ed. 2d 450 (1977)). *Batson* replaced the previous "threshold requirement to prove systemic discrimination under a Fourteenth Amendment jury claim, with the rule that discrimination by the prosecutor in selecting the defendant's jury sufficed to establish the constitutional violation." *Miller-El v. Dretke*, 545 U.S. 231, 236, 125 S. Ct. 2317, 162 L. Ed. 2d 196 (2005).

¶25 Under these rules, the trial court's ruling here is clearly erroneous. The trial court held that "[t]he fact that there has been an exclusion of a single black juror is insufficient to establish a prima facie case *pattern of exclusion*." 3 Verbatim Report of Proceedings (VRP) at 111 (emphasis added). But as Justice Alexander noted in his dissent in *Rhone*, "[I]t is clearly inappropriate for a trial court to consider whether the jury selection process involves *systematic exclusion* of venire members based on a discriminatory purpose." *Rhone*, 168 Wn.2d at 660 (Alexander, J., dissenting) (citing *Batson*, 476 U.S. at 95). Instead, "a 'single invidiously discriminatory governmental act' is sufficient to warrant reversal of a conviction." *Rhone*, 168 Wn.2d at 660 (quoting *Batson*, 476 U.S. at 95)). Here, the trial court required Meredith to show systematic discrimination by showing a "pattern of exclusion." 3 VRP at 111. In so doing, the court applied the incorrect standard and, thus, its ruling was clearly erroneous.

¶26 My second reason for dissenting is that I would follow Justice Alexander's bright-line rule in *Rhone*: "a

prima facie case of discrimination is established under *Batson* when the sole remaining venire member of the defendant's constitutionally cognizable racial group or the last remaining minority member of the venire is peremptorily challenged."[10] *Rhone*, 168 Wn.2d at 661 (Alexander, J., dissenting). I agree with Justice Alexander that

> [s]peculation after the fact about whether the State had a discriminatory purpose in exercising a peremptory challenge is unreliable. The need to speculate can be avoided entirely by requiring the State to provide a short explanation when a defendant raises a *Batson* challenge. . . . A bright line rule would provide clarity and certainty concerning the State's obligations in future cases and would simultaneously engender greater fidelity to *Batson* and its equal protection guaranty.

*Rhone*, 168 Wn.2d at 661-62 (Alexander, J., dissenting).

¶27 I recognize that Justice Alexander's proposed rule suggests that the dismissed juror must be of the same racial group as the defendant and that the majority here emphasizes this aspect of the rule. But in my view, the majority here reads this rule too narrowly by requiring the defendant and struck venire person to share the same race.

¶28 It is well settled that a defendant can object to a peremptorily challenged juror even though they do not share the same race. *Powers v. Ohio*, 499 U.S. 400, 406, 111 S. Ct. 1364, 113 L. Ed. 2d 411 (1991). Limiting a defendant's right to object "conforms neither with our accepted rules of standing to raise a constitutional claim nor with the substantive guarantees of the Equal Protection Clause and the policies underlying federal statutory law." *Powers*, 499 U.S. at 406; *accord Rhone*, 168 Wn.2d at 651 n.2 ("The United States Supreme Court has expanded the scope of *Batson*'s basic constitutional rule" to the use of peremptories by prosecutors " 'where the defendant and the excluded juror

---

[10] Justice Madsen did not adopt this bright-line rule in *Rhone*, but she stated that "going forward, [she] agree[d] with the rule advocated by [J. Alexander]." *Rhone*, 168 Wn.2d at 658 (Madsen, C.J., concurring).

are of different races.' " (quoting *Miller-El*, 545 U.S. at 269 (Breyer, J., concurring))).

¶29 Additionally, *"Batson* 'was designed "to serve multiple ends," ' only one of which was to protect individual defendants from discrimination in the selection of jurors." *Powers*, 499 U.S. at 406 (quoting *Allen v. Hardy*, 478 U.S. 255, 259, 106 S. Ct. 2878, 92 L. Ed. 2d 199 (1986) (quoting *Brown v. Louisiana*, 447 U.S. 323, 329, 100 S. Ct. 2214, 65 L. Ed. 2d 159 (1980))). "The opportunity for ordinary citizens to participate in the administration of justice has long been recognized as one of the principal justifications for retaining the jury system." *Powers*, 499 U.S. at 406; *see also Carter v. Jury Comm'n*, 396 U.S. 320, 330, 90 S. Ct. 518, 24 L. Ed. 2d 549 (1970) ("Whether jury service be deemed a right, a privilege, or a duty, the State may no more extend it to some of its citizens and deny it to others on racial grounds than it may invidiously discriminate in the offering and withholding of the elective franchise.").

¶30 I believe that a bright-line rule should not be limited to situations where the defendant and the peremptorily challenged juror share the same race. Limiting a bright-line rule in such a manner ignores the realities of the defendant's obtaining a cross section of his community. It also hinders the members of that community from equally participating in our legal system.

¶31 The benefit of giving each member of a racially cognizable group a fair opportunity to serve justice far exceeds the State's minimal burden in offering a race-neutral reason. Ensuring that justice is blind to race in selecting a jury pool is the ultimate goal, and a bright-line rule addressing the first prong of the *Batson* analysis should be crafted without considering the defendant's race against the peremptorily challenged juror's race.

¶32 The trial court applied the wrong standard by requiring the defendant to show a pattern of discrimination to establish a prima facie case. Alternatively, I would apply Justice Alexander's proposed bright-line rule to situations

like this case, in which the defendant does not share the same race as the peremptorily challenged juror.

¶33 On the basis of my disagreement with the majority's *Batson* analysis, I would reverse the convictions.

After modification, further reconsideration denied November 9, 2011.

Review granted at 173 Wn.2d 1031 (2012).