# IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

## DIVISION II

| | |
|---|---|
| In re the Personal Restraint Petition of:<br><br>GARY DANIEL MEREDITH<br><br>                Petitioner. | No. 46671-6-II<br><br><br><br>UNPUBLISHED OPINION |

MELNICK, J. — Gary Meredith filed this personal restraint petition (PRP) for relief from his convictions for rape of a child in the second degree and communicating with a minor for immoral purposes.

Meredith asserts that his restraint is unlawful because (1) the trial court erroneously denied his for cause challenge of a juror, (2) the trial court erroneously admitted his prior convictions, (3) the limiting instruction on the prior convictions was insufficient, (4) the trial court erroneously denied his motion to sever the counts, (5) his offender score was erroneously calculated, (6) the State engaged in prosecutorial misconduct, (7) he received ineffective assistance of trial and appellate counsel, and (8) the trial court's errors amounted to cumulative error. In the alternative, Meredith petitions us for an evidentiary hearing. We deny Meredith's PRP and his request for an evidentiary hearing.

FACTS

I.  FACTUAL BACKGROUND[1]

In 1996, the State charged Meredith with rape of a child in the second degree and communication with a minor for immoral purposes.  BL (age 12) was the victim of the rape charge, and AB (age 13) was the victim of the communication charge.

A jury convicted Meredith of both counts.  Meredith then absconded and did not appear for his scheduled sentencing hearing in July 1996.  The court issued a bench warrant for Meredith's arrest.  Twelve years later, Meredith was arrested and extradited to Washington.  In November 2008, the trial court entered judgment and imposed a 198-month sentence.

II.  PRETRIAL MOTIONS AND VOIR DIRE

Both parties made several pretrial motions.  The State moved to admit Meredith's prior convictions for rape in the third degree and assault in the third degree with sexual motivation.  The State argued the convictions were admissible both as an element of communicating with a minor and under ER 404(b).  Meredith argued that his prior convictions were admissible only for sentencing purposes and were inadmissible under ER 404(b).  The trial court granted the State's motion, ruling that the prior convictions were admissible under both of the State's theories.  The court ruled the evidence could be used to prove absence of mistake or identity, preparation, and motive.

---

[1] A summary of facts can be found in the published and unpublished portion of Meredith's appeal. *State v. Meredith*, 165 Wn. App. 704, 707, 259 P.3d 324 (2011) (published in part); *see also State v. Meredith*, 178 Wn.2d 180, 182, 306 P.3d 942 (2013), *abrogated by City of Seattle v. Erickson*, 188 Wn.2d 721, 398 P.3d 1124 (2017).

Meredith moved to sever the counts based on the court's earlier ruling to admit his prior convictions. He argued that the prior convictions had nothing to do with the rape of a child count. After hearing arguments, the court denied the motion, but allowed additional briefing by Meredith on his motion to reconsider. After the court reviewed the additional briefing, it again denied the severance motion. Based on this ruling, Meredith asked for a limiting instruction.

After the parties' pretrial motions, voir dire occurred over a period of three days. Both parties requested that the court seat 12 jurors and two alternates. The trial court stated that its usual practice was to seat 14 jurors and, prior to deliberations, draw two alternates randomly from the entire panel.

During voir dire, juror 32 expressed uncertainty about his ability to be impartial because Meredith had prior sex convictions. When asked by Meredith whether juror 32 would want himself to be a juror on this case if he was sitting where Meredith was, he stated, "No, I don't think so." Report of Proceedings (RP) (voir dire, May 6, 1996) at 237. Meredith challenged juror 32 for cause.

The State asked juror 32 whether, despite the life experiences he brought to court, he would commit to following the court's instructions on the law, including instructions on how to consider the prior convictions. Juror 32 answered: It would be "[p]retty hard . . . to follow the Court's instructions," but that he "would strive to" do so. RP (voir dire, May 6, 1996) at 237. The State also asked whether he would judge the case solely on the evidence, knowing that he would hear about the prior convictions. Juror 32 replied:

> That's something I would have to think about, go through all the evidence, which way to go. But one thing that I don't like about it is why do we have to have all this stuff, there is no reason for it.
> . . . .

> . . . [A]gain, I would have to deliberate after all the evidence has come in, and when we get to the jury room, see if he is telling the real truth.

RP (voir dire, May 6, 1996) at 237-38.

The State again asked juror 32 if he would follow the court's instructions, listen to the testimony, and judge the case solely on the evidence, even if the evidence bothered him. Juror 32 responded, "Yes." RP (voir dire, May 6, 1996) at 238. Meredith then asked juror 32 if he might find himself judging the case solely based on the prior convictions. Juror 32 answered, "It's quite possible that after the evidence came in, maybe it could be changed to where I could come and be impartial." RP (May 6, 1996) at 239. Meredith clarified and asked if he was already leaning toward a decision, to which juror 32 replied, "Yes." RP (voir dire, May 6, 1996) at 239.

The State objected to Meredith's challenge for cause, and the court denied Meredith's challenge. Juror 32 sat as a juror during the trial; however, because of illness, the court excused him prior to deliberations. Neither party objected.

III. TESTIMONY OF RUSSELL AND SIPES

On the night of BL's rape, Dr. Bobbi Sipes and nurse Michelle Russell conducted a sexual assault examination. It included a physical examination, pelvic examination, pubic combing, and nail parings.

Russell conducted a blue-light examination on BL's skin but found nothing. Sipes agreed with Russell's results on this examination.

Meredith attempted to question Russell about the presence of secretions outside the body in sexual assault examinations, and the State objected. Outside the presence of the jury, Meredith argued that he should be given latitude to ask about the significance of that finding in relation to other sexual assault cases. The State argued that the presence or absence or likelihood there would be secretions on other sexual assault victims invites the jury to speculate what the blue-light

4

findings should have been.  Because the fact that the blue-light examination did not produce any findings was now before the jury, the State argued it was up to the parties to argue the significance of that finding.  The trial court disallowed this line of questioning.

Russell also found a "pooling of secretions" consistent with semen in BL's vagina.  6 RP (May 9, 1996) at 498.  BL also told Sipes that before Meredith sexually assaulted her, she had not had sexual intercourse since July.  Sipes testified that her observations were consistent with "non-specific findings" for sexual intercourse.  6 RP (May 9, 1996) at 500.

Sipes collected six samples from the pelvic examination and submitted three to the hospital laboratory and three to the police.  She testified that the hospital laboratory report showed the secretions in BL's vagina contained semen with nonmotile sperm.  She testified that the presence of semen indicated BL had intercourse within three days of her examination.

Meredith attempted to ask Russell if the purpose of the samples was for deoxyribonucleic acid (DNA) analysis, and the trial court sustained the State's objection.  Meredith argued that according to the record provided, swabs were taken for purposes of DNA analysis.  The State argued that DNA analysis is controlled by the police, and whether or not DNA analysis was conducted on the swabs was outside Russell's knowledge or control.  The trial court did not allow testimony on this subject.

During the examination, Sipes noticed redness on one of BL's inner thighs.  She also discovered "a superficial abraded area with [a] superficial laceration in the . . . posterior fornix, which is the area between the vaginal opening and the anus."  6 RP (May 9, 1996) at 498.  Sipes testified that both injuries occurred within 24 hours of the examination.

Sipes also reviewed the hospital's laboratory report which showed semen in the vaginal secretion. Sipes testified that semen is generally recovered from the vaginal vault up to three days following intercourse. She also testified that intercourse could have occurred at any period of time within the stated three days, but she could not tell, by reasonable medical certainty, as to exactly when the intercourse occurred.

As with Russell, Meredith asked Sipes whether the swabs were taken for purposes of DNA testing, to which Sipes replied, "Yes." 6 RP (May 9, 1996) at 504. The State objected. The court sustained the objection and instructed the jury to disregard the question and answer.

IV.     JURY INSTRUCTIONS AND CLOSE OF TRIAL

The trial court considered the parties' proposed jury instructions. Meredith's proposed instructions did not include a limiting instruction regarding the prior conviction evidence; however, he objected to the limiting instruction proposed by the State. He argued that the limiting instruction did not sufficiently explain the purpose of the prior conviction evidence. The trial court gave the following limiting instruction to the jury:

> Evidence that the defendant has previously been convicted of a crime is not evidence of the defendant's guilt. Such evidence may be considered by you in deciding Count II and for no other purpose.

PRP Resp., App. F (Instr. 14).

Meredith made several motions including a renewal of his motion to sever the counts. The court denied the motions.

The jury convicted Meredith of both charges.

6

V.  SENTENCING

On November 21, 2008, the court held a sentencing hearing.  The State submitted a certified copy of Meredith's prior convictions and argued that the current convictions were not the same criminal conduct.  Meredith argued that the current convictions should be treated as the same criminal conduct for purposes of calculating his offender score.

The trial court agreed with the State.  It then imposed a 198-month sentence on the rape of a child conviction and a 60-month sentence on the communication conviction, to be served concurrently.

VI.  POST CONVICTION

Meredith appealed his convictions.  *State v. Meredith*, 165 Wn. App. 704, 707, 259 P.3d 324 (2011) (published in part).  He contended that the State violated *Batson v. Kentucky*, 476 U.S. 79, 106 S. Ct. 1712, 90 L. Ed. 2d 69 (1986).  He also argued that the trial court violated his rights to confrontation and cross-examination, that insufficient evidence supported his communication conviction, and that the trial court improperly prohibited him from arguing about the absence of DNA evidence during closing argument.  *Meredith*, 165 Wn. App. at 707.  We affirmed the convictions, as did the Supreme Court.  *State v. Meredith*, 178 Wn.2d 180, 182, 306 P.3d 942 (2013), *abrogated by City of Seattle v. Erickson*, 188 Wn.2d 721, 398 P.3d 1124 (2017); *Meredith*, 165 Wn. App. at 707.  We concluded that overwhelming evidence supported Meredith's guilt. *Meredith*, No. 38600-3-II, slip op. (unpublished portion) at 12, 14.

Meredith filed this petition, and we granted it because the trial court did not give Meredith all the peremptory strikes afforded to him under the court rules and because he received ineffective assistance of counsel.  *In re Pers. Restraint of Meredith*, No. 46671-6-II, (Wash. Ct. App. Feb. 14, 2017) (unpublished), http://www.courts.wa.gov/opinions/.  The Supreme Court reversed our

7

decision and remanded it for us to consider Meredith's remaining claims. *In re Pers. Restraint of Meredith*, 191 Wn.2d 300, 422 P.3d 458 (2018).

ANALYSIS

I.      PRP STANDARD OF REVIEW

A petitioner may request relief through a PRP when he or she is under an unlawful restraint. RAP 16.4(a)-(c). "A personal restraint petitioner must prove either a (1) constitutional error that results in actual and substantial prejudice or (2) nonconstitutional error that 'constitutes a fundamental defect which inherently results in a complete miscarriage of justice.'" *In re Pers. Restraint of Monschke*, 160 Wn. App. 479, 488, 251 P.3d 884 (2010) (internal quotation marks omitted) (quoting *In re Pers. Restraint of Davis*, 152 Wn.2d 647, 672, 101 P.3d 1 (2004)). The petitioner must prove the error by a preponderance of the evidence. *In re Pers. Restraint of Lord*, 152 Wn.2d 182, 188, 94 P.3d 952 (2004). In addition, "[t]he petitioner must support the petition with facts or evidence and may not rely solely on conclusory allegations." *Monschke*, 160 Wn. App. at 488; *see* RAP 16.7(a)(2)(i).

In evaluating PRPs, we can

(1) dismiss the petition if the petitioner fails to make a prima facie showing of constitutional or nonconstitutional error, (2) remand for a full hearing if the petitioner makes a prima facie showing but the merits of the contentions cannot be determined solely from the record, or (3) grant the PRP without further hearing if the petitioner has proved actual prejudice or a miscarriage of justice.

*In re Pers. Restraint of Stockwell*, 160 Wn. App. 172, 176-77, 248 P.3d 576 (2011).

"In PRPs, we ordinarily will not review issues previously raised and resolved on direct review." *In re Pers. Restraint of Gentry*, 137 Wn.2d 378, 388, 972 P.2d 1250 (1999). Raising the same issue but presenting it in a different form does not justify a second review. *In re Pers.*

*Restraint of Stenson*, 142 Wn.2d 710, 720, 16 P.3d 1 (2001). A PRP is not a substitute for an appeal. *In re Pers. Restraint of Hagler*, 97 Wn.2d 818, 824, 650 P.2d 1103 (1982).

II.      CHALLENGE FOR CAUSE

Meredith argues that the trial court violated his right to an impartial jury by denying his challenge for cause against juror 32 and by failing to excuse the juror sua sponte. We disagree.

A.      Standard of Review

A trial court's denial of a challenge for cause is reviewed for abuse of discretion. *State v. Davis*, 175 Wn.2d 287, 312, 290 P.3d 43 (2012), *abrogated on other grounds by State v. Gregory*, 192 Wn.2d 1, 427 P.3d 621 (2018). Deference is given to the trial court because the trial judge is in the best position to "'interpret and evaluate a juror's answers to determine whether the juror [will] be fair and impartial.'" *State v. Lawler*, 194 Wn. App. 275, 282, 374 P.3d 278 (2016) (internal quotation marks omitted) (quoting *Davis*, 175 Wn.2d at 312).

Jurors are presumed to follow the instructions of the court. *State v. Warren*, 165 Wn.2d 17, 29, 195 P.3d 940 (2008). The party challenging the trial court's decision must show more than a mere possibility that a juror was prejudiced. *State v. Noltie*, 116 Wn.2d 831, 840, 809 P.2d 190 (1991). "[E]quivocal answers alone do not require a juror to be removed when challenged for cause, rather, the question is whether a juror with preconceived ideas can set them aside." *Noltie*, 116 Wn.2d at 839.

B.      The Trial Court Did Not Abuse Its Discretion

Meredith argues that juror 32 had overwhelming bias and that the juror's promise to "strive" to follow the court's instruction was insufficient. PRP Br. in Support at 20. He also argues

9

that the State's attempt to rehabilitate the juror was insufficient. Meredith further argues that the trial court erred because it did not assess the juror's state of mind to determine if actual bias existed. We disagree.

The trial court is in the best position to evaluate whether a juror must be dismissed. *Davis*, 175 Wn.2d at 312. Our review is limited to juror 32's transcribed voir dire answers; we cannot assess the juror's tone of voice, facial expressions, body language, reactions, or other nonverbal communications. *See Lawler*, 194 Wn. App. at 287. The trial court observed and evaluated juror 32 in a way that we cannot.

Meredith has failed to meet his burden for at least two reasons. He has failed to show that the trial court abused its discretion by failing to excuse juror 32. In addition, the court excused juror 32 prior to deliberations, and juror 32 did not participate in finding Meredith guilty. Meredith cannot demonstrate any prejudice.

III.     ADMISSION OF PRIOR CONVICTIONS

Meredith argues that the trial court violated his right to a fair trial by improperly admitting his prior convictions. He argues that the prior convictions had no probative or material value in proving the communicating charge and that the admission was overwhelmingly prejudicial on the rape of a child charge. We conclude that the prior convictions were admissible as an element of the communication charge. However, because the trial court's limiting instruction told the jury this evidence could only be used on the communicating charge, the prior convictions had no prejudicial effect on the rape of a child charge. Jurors are presumed to follow the instructions of the court. *Warren*, 165 Wn.2d at 29.

A.     Standard of Review

An evidentiary error, such as erroneous admission of ER 404(b) evidence, is not of constitutional magnitude. *State v. Everybodytalksabout*, 145 Wn.2d 456, 468-69, 39 P.3d 294 (2002); *State v. Stenson*, 132 Wn.2d 668, 709, 940 P.2d 1239 (1997). We review evidentiary rulings for an abuse of discretion.[2] *State v. Williams*, 137 Wn. App. 736, 743, 154 P.3d 322 (2007). "A court abuses its discretion when its evidentiary ruling is 'manifestly unreasonable, or exercised on untenable grounds, or for untenable reasons.'" *Williams*, 137 Wn. App. at 743 (internal quotation marks omitted) (quoting *State v. Downing*, 151 Wn.2d 265, 272, 87 P.3d 1169 (2004)).

B.     Evidence Relevant

A person who communicates with a minor for immoral purposes is guilty of a gross misdemeanor; however, if the person has previously been convicted of a felony sexual offense, the person is guilty of a class C felony. RCW 9.68A.090(1)-(2).[3] Where, as here, a person is charged with felony communicating, the State must prove beyond a reasonable doubt that the defendant has been previously convicted under this same section or of any other felony sex offense. *State v. Bache*, 146 Wn. App. 897, 905, 193 P.3d 198 (2008). Prior convictions that elevate a crime from a gross misdemeanor to a felony are an element that the State must prove beyond a reasonable doubt. *State v. Roswell*, 165 Wn.2d 186, 198, 196 P.3d 705 (2008). If a defendant wants to avoid having the prior offense go before the jury, he or she may stipulate to the predicate offense. *Old*

---

[2] The fact that the defendant has couched this argument in constitutional terms does not change the standard of review. *State v. Dye*, 178 Wn.2d 541, 548, 309 P.3d 1192 (2013); *State v. Blair*, 3 Wn. App. 2d 343, 349-50, 415 P.3d 1232 (2018).

[3] The jury convicted Meredith under this statute. Although there have been amendments to RCW 9.68A.090 since the date of Meredith's crimes, none is relevant to this case.

11

*Chief v. United States*, 519 U.S. 172, 190-91, 117 S. Ct. 644, 136 L. Ed. 2d 574 (1997); *State v. Gladden*, 116 Wn. App. 561, 565-66, 66 P.3d 1095 (2003).[4]

The trial court properly admitted the prior sex convictions because they were relevant to prove an element of the communication charge.[5]

IV.    LIMITING JURY INSTRUCTION

Meredith argues that the trial court prejudiced him by giving an incorrect limiting instruction relating to his prior convictions. He argues that the instruction did not tell the jury the limited purpose of the evidence and did not inform them that it could not be used to show Meredith acted in conformity. We agree the court gave an incorrect instruction but conclude that any error was harmless.

A court has the duty to correctly instruct a jury once a criminal defendant requests a limiting instruction. This duty exists even if a defendant does not propose a correct instruction. *State v. Gresham*, 173 Wn.2d 405, 424, 269 P.3de 207 (2012).

---

[4] Meredith offered to stipulate to the prior convictions, but he incorrectly argued that the prior convictions stipulated to should be considered by the court at sentencing, not by the jury as an element of the crime. *See Old Chief*, 519 U.S. at 190-91; *Gladden*, 116 Wn. App. at 565-66.

[5] Having concluded that the prior convictions were admissible to prove an element of a charged crime, we also conclude that the court erred by admitting the evidence under ER 404(b). The court found that Meredith's prior convictions were admissible for the purpose of showing absence of mistake or accident and to prove common scheme, preparation, or plan because of the similarity between the victims, circumstances, and acts that occurred in the prior and current offenses. However, the jury only heard about the prior convictions, not the details underlying them. While the facts underlying the prior convictions may have shown a common scheme, preparation, or plan as to the rape of a child charge, the fact of conviction alone was insufficient for these purposes. Because of our resolution, we need not address Meredith's argument that the admission of the prior convictions under ER 404(b) violates separation of powers.

At trial, the court gave the following limiting instruction:

Evidence that the defendant has previously been convicted of a crime is not evidence of the defendant's guilt. Such evidence may be considered by you in deciding Count II and for no other purpose.

PRP Resp., App. F (Instr. 14).

Here, the limiting instruction informed the jury that the prior conviction evidence was admitted only on the communication charge and could not be used as evidence of Meredith's guilt. We previously concluded that the prior conviction evidence could only be used to prove one element of the communicating charge. But the limiting instruction allowed the jury to consider the evidence on the communicating charge for any purpose other than guilt.

Nonetheless, giving an incorrect limiting instruction may be harmless. *See Gresham*, 173 Wn.2d at 425; *State v. Mason*, 160 Wn.2d 910, 935, 162 P.3d 396 (2007). The error is harmless "'unless, within reasonable probabilities, had the error not occurred, the outcome of the trial would have been materially affected.'" *State v. Smith*, 106 Wn.2d 772, 780, 725 P.2d 951 (1986) (quoting *State v. Cunningham*, 93 Wn.2d 823, 831, 613 P.2d 1139 (1980)). Had a proper limiting instruction been given, and had the jury's consideration of the evidence been expressly limited to proving an element of the communicating charge, the remaining overwhelming evidence of Meredith's guilt persuades us that the outcome of his trial would not have been materially affected.

We are persuaded that the outcome of Meredith's trial was not materially affected with the erroneous limiting instruction because overwhelming evidence of Meredith's guilt existed. Meredith cannot demonstrate that the outcome of his trial would have been materially affected if the court had given a correct instruction.

V.  MOTION TO SEVER

Meredith argues that the trial court erred in denying his motion to sever the rape of a child charge from the communicating charge, thereby violating his right to a fair trial by an impartial jury.  He also argues that admitting the prior convictions was particularly prejudicial to the rape of a child charge and there is a "recognized danger" that the prejudice would persist even where the jury is instructed to consider the counts separately.  PRP Supp. Br. at 22.  We disagree.

A.  Standard of Review

We review a motion to sever counts for manifest abuse of discretion.  *State v. Kalakosky*, 121 Wn.2d 525, 537, 852 P.2d 1064 (1993).[6]

CrR 4.3(a) permits two or more offenses of similar character to be joined for trial.  Properly joined offenses may be severed if "the court determines that severance will promote a fair determination of the defendant's guilt or innocence of each offense."  CrR 4.4(b).  A defendant "'seeking severance ha[s] the burden of demonstrating that a trial involving both counts would be so manifestly prejudicial as to outweigh the concern for judicial economy.'"  *Kalakosky*, 121 Wn.2d at 537 (quoting *State v. Bythrow*, 114 Wn.2d 713, 718, 790 P.2d 154 (1990)).

B.  The Trial Court Did Not Abuse Its Discretion in Denying Meredith's Motion to Sever

In assessing whether to sever the counts to avoid prejudice to a defendant, the trial court considers: "'(1) the strength of the State's evidence on each count; (2) the clarity of defenses as to each count; (3) court instructions to the jury to consider each count separately; and (4) the admissibility of evidence of the other charges even if not joined for trial.'"  *State v. Sutherby*, 165

---

[6] The fact that the defendant has couched this argument in constitutional terms does not change the standard of review.  *See Dye*, 178 Wn.2d at 548; *Blair*, 3 Wn. App. 2d at 343.

Wn.2d 870, 884-85, 204 P.3d 916 (2009) (quoting *State v. Russell*, 125 Wn.2d 24, 63, 882 P.2d 747 (1994)).

The court considered each of these factors at the motion to sever and denied the motion. The court weighed the strength of the State's case on each count and evaluated the potential prejudice that could exist by not severing.

The court ruled that it would not sever the counts based on the first factor. As to the second factor, the court found that Meredith did not have inconsistent defenses and no prejudice existed under this factor. As to the other factors, the court found that evidence of each charge would be admissible on the other one.

We conclude that the court did not abuse its discretion in denying the severance motion, and its ruling did not constitute a fundamental defect which inherently resulted in the miscarriage of justice.

VI.     OFFENDER SCORE CALCULATION

Meredith argues that because the court did not count his prior concurrently served convictions as one offense for purposes of offender score calculation, a fundamental defect and complete miscarriage of justice occurred. Meredith also argues that the same criminal conduct analysis is inapplicable to his offender score calculation because that rule came into effect in 1995. We disagree with Meredith.

We review a sentencing court's calculation of an offender score de novo. *State v. Mehaffey*, 125 Wn. App. 595, 599, 105 P.3d 447 (2005). However, same criminal conduct is a factual determination reviewed for abuse of discretion. *In re Pers. Restraint of Toledo-Sotelo*, 176 Wn.2d 759, 764, 297 P.3d 51 (2013).

A finding of the same criminal conduct lowers the offender score below the presumptive score and favors the defendant. Because it favors the defendant, the defendant must establish the crimes constitute the same criminal conduct. *State v. Aldana Graciano*, 176 Wn.2d 531, 539, 295 P.3d 219 (2013).

Under the Sentencing Reform Act, chapter 9.94A RCW, sentencing courts apply the definition of criminal history in effect at the time the offense was committed to calculate the sentence for that offense. *In re Pers. Restraint of LaChapelle*, 153 Wn.2d 1, 12, 100 P.3d 805 (2004). An "incorrect calculation of an offender score constitutes a fundamental defect in sentencing resulting in a complete miscarriage of justice which requires relief in a personal restraint proceeding under RAP 16.4." *In re Pers. Restraint of Connick*, 144 Wn.2d 442, 465, 28 P.3d 729 (2001).

A sentencing court is required to exercise its discretion to determine whether a defendant's prior convictions for which concurrent sentences were imposed should be treated as one offense or separate offenses in calculating the defendant's offender score. *State v. Reinhart*, 77 Wn. App. 454, 457-59, 891 P.2d 735 (1995) (current sentencing court must make an independent determination whether prior convictions should be considered one or separate offenses); *State v. Wright*, 76 Wn. App. 811, 827, 888 P.2d 1214 (1995), *superseded by statute on other grounds*, LAWS OF 1995, ch. 316, § 1. The sentencing court is neither bound by earlier determinations of whether to count a prior offense as one or separate offenses, nor is it required to find that the offenses constituted same criminal conduct in order to count them as one offense. *Mehaffey*, 125 Wn. App. at 600-01.

Former RCW 9.94A.360(6)(a) (Supp. 1995) stated:

In the case of multiple prior convictions, for the purpose of computing the offender score, count all convictions separately, except:
    (i) Prior offenses which were found, under RCW 9.94A.400(1)(a),[7] to encompass the same criminal conduct, shall be counted as one offense, the offense that yields the highest offender score. *The current sentencing court shall determine with respect to other prior adult offenses for which sentences were served concurrently whether those offenses shall be counted as one offense or as separate offenses* using the "same criminal conduct" analysis found in RCW 9.94A.400(1)(a), and if the court finds that they shall be counted as one offense, then the offense that yields the highest offender score shall be used.

(Emphasis added.)

Meredith had two prior convictions for rape in the third degree and assault in the third degree with sexual motivation. It is undisputed that the prior convictions did not constitute the same criminal conduct. The crimes occurred on different days and against different victims.

Meredith now argues that his prior convictions should have been counted as one offense in calculating his offender score because they were served concurrently. He claims the court failed to make a proper determination on the record. Meredith does not dispute that his prior convictions were not the same criminal conduct. Meredith's argument fails.

VII.    PROSECUTORIAL MISCONDUCT

Meredith argues that the State made misstatements during closing argument that amounted to prosecutorial misconduct, resulting in an unfair trial and requiring reversal. We disagree.

---

[7] Former RCW 9.94A.400(1)(a) (Supp. 1995), pertaining to "same criminal conduct" analysis, states in relevant part: "'Same criminal conduct,' as used in this subsection, means two or more crimes that require the same criminal intent, are committed at the same time and place, and involve the same victim."

A personal restraint petitioner who raises prosecutorial misconduct has the burden to prove the misconduct was either a constitutional error resulting in actual and substantial prejudice or a fundamental defect resulting in a complete miscarriage of justice. *In re Pers. Restraint of Lui*, 188 Wn.2d 525, 539, 397 P.3d 90 (2017).

When, as here, the petitioner did not object during trial, his prosecutorial misconduct claim is considered waived unless the misconduct is "'so flagrant and ill-intentioned that it cause[d] an enduring and resulting prejudice that could not have been neutralized by a curative instruction.'" *In re Pers. Restraint of Caldellis*, 187 Wn.2d 127, 143, 385 P.3d 135 (2016) (quoting *State v. Brown*, 132 Wn.2d 529, 561, 940 P.2d 546 (1997)). We evaluate whether misconduct is flagrant and ill-intentioned by focusing "less on whether the prosecutor's misconduct was flagrant or ill intentioned and more on whether the resulting prejudice could have been cured." *State v. Emery*, 174 Wn.2d 741, 762, 278 P.3d 653 (2012). Prosecutorial misconduct that denies a defendant a fair trial is flagrant and ill-intentioned. *In re Pers. Restraint of Phelps*, 190 Wn.2d 155, 165-66, 410 P.3d 1142 (2018).

> Put simply, to prevail in his PRP, [a petitioner] must overcome three hurdles. First, he must show the prosecutor committed misconduct. Second, because he did not object during trial, [he] must show that misconduct was flagrant and ill-intentioned and caused him prejudice incurable by a jury instruction. Third, because he raises this issue in a PRP, [a petitioner] must show the prosecutor's flagrant and ill-intentioned misconduct caused him actual and substantial prejudice.

*Phelps*, 190 Wn.2d at 166.

Meredith argues that the prosecutor misstated the evidence in his closing argument and that he contradicted Dr. Sipes's testimony. Meredith also argues that prosecutorial misconduct occurred when the State expressed a personal opinion by vouching for the credibility of its

witnesses. Meredith also claims that the State expressed a personal opinion by vouching against the credibility of Meredith's witnesses and that the State expressed a personal opinion of Meredith's guilt independent of the testimony of the case.

Meredith cannot overcome the first hurdle. We have reviewed the record and the specific portions of the record Meredith claims support his prosecutorial misconduct arguments. The prosecutor did not commit misconduct. The prosecutor argued reasonable inferences from the record.

VIII. INEFFECTIVE ASSISTANCE OF COUNSEL

Meredith claims that he received ineffective assistance of trial counsel.[8] The State argues that Meredith previously raised many of his ineffective assistance claims in his appeal, and even if we consider the claims, Meredith cannot prove prejudice. We conclude Meredith's claims fail.

A. Standard of Review

We review claims of ineffective assistance of counsel de novo. *Sutherby*, 165 Wn.2d at 883. An appellant claiming ineffective assistance of counsel has the burden to establish that (1) counsel's performance was deficient and (2) the performance prejudiced the defendant's case. *Strickland v. Washington*, 466 U.S. 668, 687, 104 S. Ct. 2052, 80 L. Ed. 2d 674 (1984). Failure to establish either prong is fatal to an ineffective assistance of counsel claim. *Strickland*, 466 U.S. at 700. An attorney's performance is deficient if it falls "below an objective standard of

---

[8] Meredith also claims he received ineffective assistance of appellate counsel who did not raise the issues of receiving too few peremptory challenges and challenges for cause as to juror 32. Having disposed of these issues previously, we do not readdress them.

reasonableness based on consideration of all the circumstances." *State v. McFarland*, 127 Wn.2d 322, 334-35, 899 P.2d 1251 (1995). Deficient performance prejudices a defendant if "there is a reasonable probability that, but for counsel's deficient performance, the outcome of the proceedings would have been different." *State v. Kyllo*, 166 Wn.2d 856, 862, 215 P.3d 177 (2009).

Our scrutiny of counsel's performance is highly deferential; we strongly presume reasonableness. *State v. Grier*, 171 Wn.2d 17, 33, 246 P.3d 1260 (2011). An appellant faces a strong presumption that counsel's representation was effective. *Grier*, 171 Wn.2d at 33. To rebut this presumption, a defendant bears the burden of establishing the absence of any legitimate trial tactic explaining counsel's performance. *Grier*, 171 Wn.2d at 33. Failing to conduct research falls below an object standard of reasonableness where the matter is at the heart of the case. *See Kyllo*, 166 Wn.2d at 868.

Generally, in a PRP, the petitioner must demonstrate by a preponderance of the evidence that a constitutional error resulted in actual and substantial prejudice or a nonconstitutional error resulted in a complete miscarriage of justice. But a petitioner claiming ineffective assistance of counsel need only satisfy *Strickland*'s prejudice test; there is no heightened standard. *In Re Crace*, 174 Wn.2d 835, 847, 280 P.3d 1102 (2012).

A "new" ground for relief is not created merely by supporting a previous ground with different factual allegations or different legal arguments, or by couching the claim in different language. *In re Pers. Restraint of Yates*, 177 Wn.2d 1, 17, 296 P.3d 872 (2013); *In re Pers. Restraint of Lord*, 123 Wn.2d 296, 329, 868 P.2d 835 (1994). For example, a petitioner generally may not renew a previously determined issue simply by recasting it as an ineffective assistance claim. *Stenson*, 142 Wn.2d at 720.

B.     Trial Counsel

Meredith argues that he received ineffective assistance of trial counsel because counsel failed to exercise a peremptory challenge on a juror, object to the offender score calculation, make an offer of proof regarding the frequency of blue-light examinations, make an offer of proof regarding admissibility of evidence regarding DNA testing, perform an adequate pretrial investigation and cross-examination of Dr. Sipes, and object to the State's closing arguments.[9]

1.     Challenge For Cause

Meredith argues that he received ineffective assistance of counsel when counsel failed to peremptorily remove juror 32. We disagree.

Meredith fails to prove prejudice. Near the close of trial but prior to deliberations, the trial court excused juror 32 for illness. Meredith fails to demonstrate how the failure to exercise a peremptory against juror 32 prejudiced him. He cannot show that the outcome of his trial would have been different.

2.     Blue-Light Examination – Offer of Proof and Pretrial Investigation

Meredith argues that he received ineffective assistance of counsel because counsel failed to submit an offer of proof regarding the issue of the frequency of blue-light examinations. Meredith also argues that counsel was deficient because he did not conduct an investigation on Russell and the blue-light examination of BL's clothes. Meredith raised this issue on appeal but now couches it as an ineffective assistance of counsel claim. Because Meredith raised this claim in his appeal, we do not consider it.

---

[9] We have previously concluded the court did not err in calculating Meredith's offender score and that the prosecutor did not commit misconduct in closing argument. We do not address these issues again. Trial counsel was not ineffective regarding either of these issues.

### 3. DNA Testing – Offer of Proof

Meredith argues that he received ineffective assistance of counsel when counsel failed to make an offer of proof as to the admissibility of evidence regarding DNA testing. He also argues that he failed to investigate the lack of DNA testing. Meredith raised this issue on appeal but now couches it as an ineffective assistance of counsel claim. Because Meredith raised this claim in his appeal, we do not consider it.

### 4. Pretrial Investigation and Cross Examination of Dr. Sipes

Meredith argues that he received ineffective assistance of counsel because counsel failed to adequately prepare for cross-examination of Sipes, and failed to perform an adequate pretrial investigation and obtain an expert to consult or testify regarding Sipes's testimony regarding sperm motility. Meredith raised this issue on appeal but now couches it as an ineffective assistance of counsel claim. Because Meredith raised this claim in his appeal, we do not consider it.

## IX. CUMULATIVE ERROR

Meredith argues that the cumulative effect of trial court's errors and ineffective assistance of counsel deprived him of a fair trial. We disagree.

Cumulative error doctrine applies where a combination of trial errors denies the accused of a fair trial, even where any one of the errors, taken individually, would be harmless. *In re Detention of Coe*, 175 Wn.2d 482, 515, 286 P.3d 29 (2012); *Lord*, 123 Wn.2d at 332. Meredith's claim fails.

22

X.  EVIDENTIARY HEARING

In the alternative, Meredith requests that we transfer this case for a reference hearing regarding the duration of motile sperm and lack of physical findings.  We deny this request.

RAP 16.11(b) provides in relevant part: "If the petition cannot be determined solely on the record, the Chief Judge will transfer the petition to a superior court for a determination on the merits or for a reference hearing."  To obtain an evidentiary hearing, the petitioner must demonstrate that there is competent, admissible evidence to establish facts that would entitle the petitioner to relief.  *In Pers. Restraint of Spencer*, 152 Wn. App. 698, 707, 218 P.3d 924 (2009).

As previously established by this court in Meredith's direct appeal, "overwhelming evidence" exists to support Meredith's convictions.  *Meredith*, No. 38600-3-II, slip op. (unpublished portion) at 14.  The evidence included multiple eyewitness testimonies regarding what occurred between Meredith and BL, and Meredith and AB.  Witnesses testified about the presence of sperm inside BL's vaginal vault and that its presence indicated that intercourse had taken place within three days.

Meredith argues that the presence of nonmotile sperm casts doubt on whether sexual intercourse occurred between him and BL.  He argues that consulting an expert regarding the medical report and laboratory results at a reference hearing would allow him to establish medical facts regarding the nonmotile sperm and its significance in this case.  Whether the sperm was motile or nonmotile is a moot point because only penetration, not ejaculation, is a required element of rape of a child.  The evidence presented at trial supported this finding.  Further, we ruled that even without the laboratory report regarding the nonmotile sperm, the evidence was overwhelming and supported a guilty verdict.  *Meredith*, No. 38600-3-II, slip op. (unpublished portion) at 12, 14.

Meredith has not demonstrated that a reference hearing on the physical findings and nonmotile sperm would more likely than not change the outcome of his trial. We deny Meredith's request for a reference hearing.

We deny Meredith's PRP and affirm his convictions and sentence.

A majority of the panel having determined that this opinion will not be printed in the Washington Appellate Reports, but will be filed for public record in accordance with RCW 2.06.040, it is so ordered.

Melnick, J.

We concur:

Johanson, J.

Maxa, C.J.