248 P.3d 576 (2011)
In re Personal Restraint Petition of Daniel STOCKWELL, Petitioner.
No. 37238-0-II.
Court of Appeals of Washington, Division 2.
February 17, 2011.
As Corrected March 4, 2011.
*577 Neil Martin Fox, Law Office of Neil Fox, PLLC, Seattle, WA, for Petitioner.
Randall Avery Sutton, Kitsap Co. Prosecutor's Office, Port Orchard, WA, for Respondent.

PART PUBLISHED OPINION
ARMSTRONG, P.J.
¶ 1 A jury convicted Daniel Stockwell of first degree child molestation and attempted first degree molestation of his step-granddaughters, E.M. and M.S. The trial court found Stockwell was a persistent offender and sentenced him to life without the possibility of parole. On direct appeal, we and the Washington Supreme Court affirmed the convictions and sentence. In this timely personal restraint petition (PRP), Stockwell argues (1) his prior 1986 conviction for first degree statutory rape is not comparable to the current crime of first degree child rape; (2) the trial court erred by sealing jury questionnaires without weighing the five Bone-Club[1] factors; (3) the trial court erred when ruling on challenges to certain jurors for cause; (4) the trial court erred by sending certain exhibits to the jury room; and (5) his appellate counsel on direct appeal ineffectively represented him by failing to request voir dire transcripts and inadequately briefing the comparability analysis. Finding no unlawful restraint, we deny the petition.

FACTS
¶ 2 In 2004, while babysitting E.M. and M.S., Stockwell touched both girls' vaginas on the outside of their clothes. E.M. was seven years old and M.S. was eight years old at the time. E.M. told Cynthia Conrad, a child interviewer, that Stockwell touched her vagina through her clothes while the two were alone in his living room watching a movie. M.S. told Conrad that she saw Stockwell touch E.M. and that Stockwell touched her in the same way. Conrad took near verbatim notes during the interviews and then transcribed them as soon as possible.
¶ 3 The State charged Stockwell with first degree child molestation for the incident with E.M. and attempted first degree child molestation for the incident with M.S.[2] A jury convicted Stockwell of both counts. In 1986, Stockwell had pleaded guilty to first degree statutory rape. The trial court found the 1986 first degree statutory rape statute comparable to the current first degree child rape statute and sentenced Stockwell to life without possibility of parole under the persistent offender statute, RCW 9.94A.030(36)(b).
¶ 4 On direct appeal, Stockwell argued that (1) the sentencing court's comparability findings violated his right to a jury trial under Blakely v. Washington, 542 U.S. 296, 124 S.Ct. 2531, 159 L.Ed.2d 403 (2004) and (2) his prior conviction of first degree statutory rape was not comparable to first degree child rape. State v. Stockwell, 129 Wash.App. 230, 232-33, 118 P.3d 395 (2005). We affirmed. Stockwell, 129 Wash.App. at 235, 118 P.3d 395. The Supreme Court reviewed the comparability issue and held that the 1986 first degree statutory rape statute was comparable to the current first degree rape of a child statute. State v. Stockwell, 159 Wash.2d 394, 395, 150 P.3d 82 (2007).

ANALYSIS

I. Standard of Review
¶ 5 A personal restraint petition is not a substitute for a direct appeal. In re Pers. Restraint of Hagler, 97 Wash.2d 818, 823-24, 650 P.2d 1103 (1982). A personal restraint petitioner must prove either a constitutional error that caused actual prejudice or a nonconstitutional error that caused a complete miscarriage of justice. In re Pers. Restraint of Cook, 114 Wash.2d 802, 813, 792 P.2d 506 (1990). The petitioner must state *578 the facts on which he bases his claim of unlawful restraint and describe the evidence available to support the allegations; conclusory allegations alone are insufficient. RAP 16.7(a)(2)(i); In re Pers. Restraint of Williams, 111 Wash.2d 353, 365, 759 P.2d 436 (1988).
¶ 6 In evaluating personal restraint petitions, we can: (1) dismiss the petition if the petitioner fails to make a prima facie showing of constitutional or nonconstitutional error; (2) remand for a full hearing if the petitioner makes a prima facie showing but the merits of the contentions cannot be determined solely from the record; or (3) grant the personal restraint petition without further hearing if the petitioner has proven actual prejudice or a miscarriage of justice. Cook, 114 Wash.2d at 810-11, 792 P.2d 506; In re Pers. Restraint of Hews, 99 Wash.2d 80, 88, 660 P.2d 263 (1983).

II. Sealed Jury Questionnaires
¶ 7 Stockwell argues that the trial court violated his right to a public trial by sealing jury questionnaires, thereby causing a structural error requiring a new trial without a showing of prejudice. The State argues that sealing jury questionnaires does not constitute a trial court closure that violates the constitutional guarantee of a public trial. The State also argues that even if we decide that sealing the questionnaires violated Stockwell's public trial rights, it would create a new procedural rule applicable only to cases still on direct review.[3] Assuming, without deciding, that sealing the questionnaires has constitutional implications and that Stockwell can raise the issue in this PRP, his argument still fails on the merits.
¶ 8 The State's proposed jury questionnaire stated:
This questionnaire is designed to elicit information about your qualifications to sit as a juror in a pending case, and to shorten the process of jury selection. Please respond to the following questions as completely as possible. The information contained in this questionnaire will become part of the court's permanent record, although all questionnaires will be sealed and will not be available to the general public. During the questioning by the attorneys and the Court, you will be given an opportunity to explain or expand any answers if necessary....
Some of these questions may call for information of a personal nature that you may not want to discuss in an open courtroom with the press and/or the public present. If you feel an answer may invade your right to privacy, you may circle the question number to the left of the question. The Court will then give you an opportunity to explain your request for confidentiality in a closed hearing....
YOU ARE UNDER THE COURT'S ORDER: YOU MAY NOT DISCUSS THIS QUESTIONNAIRE OR YOUR ANSWERS WITH ANYONE.
Exh. 6 at 2 (emphasis added). Stockwell stipulated to using this questionnaire. When instructing the jury, the trial court further explained:
These questionnaires are going to be given to the court and to the attorneys. The questionnaires, after voir dire proceedings are done, are returned back to the clerk of court and they are shredded. They are not seen by anybody outside of the attorneys and the court that need to have this information. The copies are shredded. The originals are filed in a sealed file with the clerk of court for the record-keeping, so I want to let youadvise you of that as to these particular questionnaires.
Also, depending on answers to the questionnaires, there's a question in there about whether you would like to be examined or questioned outside the presence of other jury panel members, and be sure to consider that box there or check that if that is your request, and we will honor that request, also.
Exh. 8 at 22-23 (emphasis added). The trial court questioned several jurors individually at the jurors' request or at the attorneys' request, but it did so in open court and on the record.
*579 ¶ 9 Both the Sixth Amendment to the federal constitution and article I, section 22 of our state constitution guarantee a criminal defendant the right to a public trial. U.S. Const., amend. VI; Wash. Const., art. I, § 22. Additionally, article I, section 10 of our state constitution guarantees the public's right to public judicial proceedings, providing: "Justice in all cases shall be administered openly." To protect these public trial rights, a trial court must weigh the five Bone-Club factors and enter findings before closing a criminal hearing or trial. State v. Brightman, 155 Wash.2d 506, 514-15, 122 P.3d 150 (2005); Bone-Club, 128 Wash.2d at 258-60, 906 P.2d 325. Whether a defendant's right to a public trial has been violated is a question of law, which we review de novo. Brightman, 155 Wash.2d at 514, 122 P.3d 150.
¶ 10 Our Supreme Court recently held that a partial closure of voir dire proceedings is not necessarily structural error. State v. Momah, 167 Wash.2d 140, 156, 217 P.3d 321 (2009). In Momah, the majority stated, "[W]e have held that the remedy must be appropriate to the violation and have found a new trial required in cases where a closure rendered a trial fundamentally unfair." Momah, 167 Wash.2d at 150, 217 P.3d 321. Because Momah "affirmatively accepted the closure, argued for the expansion of it, actively participated in it, and sought benefit from it," the court held that "the closure in this case was not a structural error" and reversal was not the appropriate remedy. Momah, 167 Wash.2d at 156, 217 P.3d 321. Three dissenting justices disagreed with the majority's assertion that Momah had requested closed voir dire and that he had benefitted from the closure. Momah, 167 Wash.2d at 157, 159-60, 217 P.3d 321. The dissent also expressed concern that the trial court had not considered the public trial rights of the victim and the public. Momah, 167 Wash.2d at 157, 164-66, 217 P.3d 321. The dissent concluded that the trial court's failure to conduct a Bone-Club analysis was reversible error. Momah, 167 Wash.2d at 157, 217 P.3d 321.
¶ 11 On the same day it filed Momah, the court filed State v. Strode, 167 Wash.2d 222, 223, 217 P.3d 310 (2009), in which it reversed Strode's conviction with the plurality reasoning that the trial court's closure of voir dire violated the defendant's public trial rights, the error was structural, and reversal was appropriate. Two of the justices from the majority in Momah concurred in the result, explaining that the record showed that Strode had not actively participated in the closure to the same extent that Momah had. Strode, 167 Wash.2d at 231-36, 217 P.3d 310. The lead opinion also expressed concern for the public's right to "open" justice. Strode, 167 Wash.2d at 229-31, 217 P.3d 310. The concurring justices did not share this concern, explaining that "the lead opinion conflates the rights of the defendant, the media, and the public" and concluding that "[a] defendant should not be able to assert the right of the public ... to overturn his conviction when his own right to a public trial has been safeguarded." Strode, 167 Wash.2d at 232, 236, 217 P.3d 310.[4]
¶ 12 Stockwell likens his case to Strode because the trial court engaged in a "`knee jerk'" closure without weighing any Bone-Club factors. Supp. Br. of Petitioner at 18. He argues that unlike Momah, the trial court *580 never weighed competing constitutional interests on the record and he did not request the closure.
¶ 13 While the State proposed the questionnaires, Stockwell stipulated to their use and did not object to their sealing. He also actively participated in voir dire and used the questionnaires to identify jurors who wanted to be questioned individually. We are satisfied that the questionnaire's promise of confidentiality made it more likely jurors would candidly reveal incidents of sexual assault or abuse, providing critical information for Stockwell to use in challenging a juror for cause. Thus, Stockwell benefitted from sealing the questionnaires.
¶ 14 An error is structural when it renders a criminal trial "`fundamentally unfair or an unreliable vehicle for determining guilt or innocence.'" Momah, 167 Wash.2d at 149, 217 P.3d 321 (quoting Washington v. Recuenco, 548 U.S. 212, 218-19, 126 S.Ct. 2546, 165 L.Ed.2d 466 (2006)). As discussed above, Stockwell used the questionnaires and benefitted from their sealing. Moreover, the closure here was partial and, at most, affected only the public's right to "open" justice. Stockwell had full access to the questionnaires and the parties questioned the jurors in open court. As the various opinions and shifting alignments in Momah and Strode demonstrate, a majority of our Supreme Court is apparently unwilling at this time to allow a defendant to assert the public's "open" justice rights. Because the error here, if any, was not structural, affected only the public's right to "open" justice, and because Stockwell does not argue that he was actually prejudiced, his argument that the trial court violated his public trial rights by sealing the juror questionnaires fails. See In re Pers. Restraint of Cook, 114 Wash.2d 802, 813, 792 P.2d 506 (1990) (holding a petitioner alleging constitutional error must show actual prejudice to prevail on a PRP); see also State v. Coleman, 151 Wash.App. 614, 617, 623-24, 214 P.3d 158 (2009) (holding a trial court erred by sealing jury questionnaires without conducting a Bone-Club analysis, but that the error was not structural).
¶ 15 A majority of the panel having determined that only the foregoing portion of this opinion will be printed in the Washington Appellate Reports and that the remainder shall be filed for public record pursuant to RCW 2.06.040, it is so ordered.
I concur: HUNT, J.
VAN DEREN, J. (concurring).
¶ 34 I concur in the majority's result. I write separately, agreeing with the majority that Stockwell's public trial right has not been violated, but for different reasons.
¶ 35 First, the majority's analysis draws on State v. Momah, 167 Wash.2d 140, 217 P.3d 321 (2009), cert. denied, ___ U.S. ___, 131 S.Ct. 160, 178 L.Ed.2d 40 (2010), State v. Strode, 167 Wash.2d 222, 217 P.3d 310 (2009), and State v. Coleman, 151 Wash.App. 614, 214 P.3d 158 (2009). But two different panels of this court have held that the subsequent United States Supreme Court decision in Presley v. Georgia, ___ U.S. ___, 130 S.Ct. 721, 723, 175 L.Ed.2d 675 (2010) provides the appropriate analysis when considering courtroom closure issues. State v. Leyerle, 158 Wash.App. 474, 242 P.3d 921, 925 (2010) (noting that Presley has "eclipsed" Momah and Strode); State v. Paumier, 155 Wash.App. 673, 685, 230 P.3d 212, review granted, 169 Wash.2d 1017, 236 P.3d 206 (2010) (same).
¶ 36 As the Leyerle majority observed:

Presley speaks in broad terms, drawing on the Supreme Court's First and Sixth Amendment precedent to hold that when a trial court closes voir dire it must first apply Waller's closure criteria and the failure to do so requires reversal. See Presley, 130 S.Ct. at 724-25 (applying [Waller v. Georgia, 467 U.S. 39, 104 S.Ct. 2210, 81 L.Ed.2d 31 (1984)] and [Press-Enterprise Co. v. Superior Court, 464 U.S. 501, 104 S.Ct. 819, 78 L.Ed.2d 629 (1984)]).[[7]]
*581 242 P.3d at 928 n. 10. Presley reiterated that, "`[a]bsent consideration of alternatives to closure, the trial court could not constitutionally close the voir dire.'" Presley, 130 S.Ct. at 724 (quoting Press-Enter., 464 U.S. at 511, 104 S.Ct. 819). See also Leyerle, 242 P.3d at 925 (so noting). Accordingly, we held in Leyerle and Paumier that "`Presley, applying the federal constitution, resolves any question about what a trial court must do before excluding the public from trial proceedings, including voir dire.'" Leyerle, 242 P.3d at 925 (quoting Paumier, 155 Wash. App. at 685, 230 P.3d 212).[8]
¶ 37 Thus, under Presley, Paumier and Leyerle, the relevant inquiry for present purposes is (1) was there a courtroom closure and (2) if so, was the closure preceded by the requisite Bone-Club/Waller analysis? State v. Bone-Club, 128 Wash.2d 254, 258-59, 906 P.2d 325 (1995); Waller, 467 U.S. at 48, 104 S.Ct. 2210. I would hold that under the particular facts of this case, there does not appear to be any closure during voir dire triggering the requisite Bone-Club/Waller analysis.
¶ 38 As the majority observed, the questionnaires advised that the documents themselves "will be sealed and will not be available to the general public." Ex. 6 at 2 (emphasis added). When instructing the jury, the trial court further explained that the completed questionnaires would be provided to the court and the attorneys, and that "after voir dire proceedings are done," the questionnaires would then be returned to the court clerk where copies would be shredded and the original questionnaires would be filed in a sealed file with the clerk of the court for record keeping purposes. Ex. 8 at 22 (emphasis added). As the majority observed, while several jurors were questioned individually as a result of their answers on the questionnaires, such questioning occurred on the record in open court.
¶ 39 Here, the trial court specifically explained to the jury pool that the documents would be placed in a sealed file after completion of voir dire. The court never entered an order sealing the questionnaires. The documents apparently were placed in a sealed file by the court clerk in due course after voir dire because that was the routine practice to preserve jurors' privacy when the parties agreed that, after use of the information, the documents would be kept out of the public court file and, thus, accessible after such filing only by way of a subsequent court order. The dispositive point, however, is that the content of the questionnaires was used in open court, where the public could observe. Accordingly, no part of voir dire was closed to the public. Under these circumstances, I do not believe there is a closure triggering the requirement of a Bone-Club/Waller analysis.
NOTES
[1] State v. Bone-Club, 128 Wash.2d 254, 906 P.2d 325 (1995).
[2] While M.S. testified at trial that Stockwell touched her vagina, she had previously stated that he only attempted to touch her.
[3] See State v. Evans, 154 Wash.2d 438, 444-45, 114 P.3d 627 (2005).
[4] As the concurrence notes, two different panels of this court have concluded that Momah and Strode are no longer controlling authority in light of Presley v. Georgia, ___ U.S. ___, 130 S.Ct. 721, 175 L.Ed.2d 675 (2010). See State v. Leyerle, 158 Wash.App. 474, 481, 242 P.3d 921 (2010); State v. Paumier, 155 Wash.App. 673, 685, 230 P.3d 212, review granted, 169 Wash.2d 1017, 236 P.3d 206 (2010). We disagree. In Presley, the trial court closed the courtroom during voir dire, excluding the defendant's uncle from the courtroom, and the defendant objected. Presley, 130 S.Ct. at 722. The Georgia Supreme Court held that "trial courts need not consider alternatives to closure absent an opposing party's proffer of some alternatives" and the Supreme Court reversed, holding "trial courts are required to consider alternatives to closure even when they are not offered by the parties." Presley, 130 S.Ct. at 724-25. Presley did not consider whether an erroneous court closure necessarily results in structural error, particularly where, as here, the defendant did not object to the alleged closure, participated in it, and now seeks to use the alleged closure to collaterally attack his conviction. See also State v. Bowen, 157 Wash.App. 821, 828-29, 239 P.3d 1114 (2010). Accordingly, we apply Momah and Strode to consider whether the alleged error here warrants reversal.
[7] The Leyerle court also noted that the "[State v. ]Bone-Club[, 128 Wash.2d 254, 906 P.2d 325 (1995)] `five-step closure test' is essentially a restatement and adoption of the federal closure criteria expressed in Waller v. Georgia, 467 U.S. 39, 104 S.Ct. 2210, 81 L.Ed.2d 31 (1984)." 242 P.3d at 924 (citing In re Pers. Restraint of Orange, 152 Wash.2d 795, 805-07, 100 P.3d 291 (2004) and State v. Brightman, 155 Wash.2d 506, 515 n. 5, 122 P.3d 150 (2005)).
[8] In Leyerle, we also observed that the effect of Presley was to refocus the courtroom closure inquiry by reiterating the coextensive right of the public to be present. "`The public has a right to be present whether or not any party has asserted the right,' thus trial courts are required to consider alternatives to closure even when the parties do not offer such alternatives." Leyerle, 242 P.3d at 926 (quoting Presley, 130 S.Ct. at 724-25).