## IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

## DIVISION  II

| | |
|---|---|
| In the Matter of the Personal Restraint of:<br><br>KEONI EDWARD APO f/n/a JEREMY EDWARD GAINES,<br><br>Petitioner. | No.  51871-6-II<br><br>UNPUBLISHED OPINION |

GLASGOW, J. — A confidential informant completed a controlled buy of a suspected controlled substance from a person who referred to Jeremy Edward Gaines as her "source." After further investigation, which included a search of Gaines's car pursuant to a warrant and a police interview of Gaines, he was arrested and charged.  Gaines was ultimately convicted of solicitation to deliver a controlled substance, conspiracy to deliver a controlled substance, and first degree unlawful possession of a firearm.  We affirmed Gaines's convictions on direct appeal.

Gaines now seeks relief from personal restraint imposed following his convictions. Gaines contends that his restraint is unlawful because his trial counsel provided ineffective assistance by (1) not testing a substance alleged to contain methamphetamine before trial, (2) not moving to suppress certain evidence, (3) presenting no evidence that Gaines was receiving income from lawful sources at the time he was arrested, and (4) failing to subpoena a witness who would have testified that he owned the firearm that Gaines was charged with possessing. Gaines also contends that the trial court violated his right to counsel of his choosing by failing to allow Gaines to make pro se arguments regarding his dissatisfaction with counsel, and that his

counsel was ineffective for not asking the trial court to hear Gaines's pro se arguments. We deny Gaines's petition.

FACTS

In 2013, Tacoma police used a confidential informant to attempt a controlled buy of narcotics from Jessica Handlen. *State v. Gaines*, No. 46852-2-II, slip op. at 193 Wn. App. 1044 (Wash. Ct. App. May 3, 2016) (unpublished), http://www.courts.wa.gov/opinions/pdf/468522.pdf. When the informant met with Handlen, Handlen told the informant that she was waiting for her "source." *Id.* at *1. Shortly thereafter, Gaines pulled up. *Id.* Police saw Handlen briefly approach the driver's side of Gaines's car before returning to the informant. *Id.*

The informant later handed the police a package that the informant had received from Handlen. *Id.* The contents were 6.4 grams of a substance that field tested positive for methamphetamine. *Id.* The officers later learned that the substance was only methylsulfonylmethane, a legal substance often used to cut methamphetamine. *Id.*

About three weeks later, police stopped Gaines's car outside of a grocery store in order to execute a search warrant. *Id.* Two other passengers were in the car, including Richard Thompson, who was seated in the backseat and Brandon Ryan, who was seated in the front passenger seat. *Id.* Police saw Gaines move his hands toward his feet and later found a gun on the floorboard. *Id.* The police arrested Gaines. *Id.*

After being advised of his *Miranda*[1] rights, Gaines acknowledged to police that he was dealing methamphetamine but said that he "was a small fish . . . [as] a runner for the Mexicans."

---

[1] *Miranda v. Arizona*, 384 U.S. 436, 86 S. Ct. 1602, 16 L. Ed. 2d 694 (1966).

*Id.* (alterations in original) (footnote omitted).  Gaines told police that he had been at the grocery store because he was wiring "money to Mexico for the dope man."  *Id.*  Gaines also said that he was "supposed to be picking up two pounds."  *Id.*

During a search of Gaines's car, police saw a wire transfer receipt showing Gaines sent $900 to a person in Mexico and one showing Ryan sent $1,000 to a person in Mexico.  *Id.* During a search of Gaines's person, police found over $600 in cash.  The following day, the State charged Gaines with unlawful delivery of a controlled substance and first degree unlawful possession of a firearm.

Before trial, Gaines replaced his court appointed counsel with a private attorney.  *Id.* at *2.  After two joint requests for trial continuance were granted, Gaines again replaced his retained counsel with a new private attorney, Geoffrey Cross.  *Id.*  After Cross represented Gaines for seven months, Cross and Gaines both filed motions to have Cross replaced as counsel. *Id.*  The trial court denied the request to replace Cross as counsel, reasoning in part that the trial date was too close.  *Id.*

Before trial, Cross filed two additional motions to withdraw as counsel, asserting that there had been a breakdown in communications.  *Id.*  Meanwhile, the trial court granted two more joint motions for continuance, setting a trial date for October 16, 2014, over a year after the original trial date.  *Id.*  Then, on the day set for trial, "the court heard Gaines's and Cross's renewed motion for a continuance and counsel substitution in conjunction with Barbara Corey, who was a private attorney with whom Gaines wanted to replace Cross."  *Id.*  Corey said she could not try the case before the end of the year.  *Id.*  Although Corey said she could try the case in February 2015, "the court disagreed based on Corey's caseload."  *Id.*  The court ultimately

denied the motions based on the age of the case and the fact that Corey could not promptly go to trial. *Id*. The trial court clarified that it was denying Gaines's motion to replace his counsel only because it would require continuing the trial, stating:

> Now, I don't really care whether Ms. Corey's on this case or not, but I do care that the trial date not continue any longer. So, while I'd be perfectly willing to let Ms. Corey into this case, she's also in trial right now in another case, so—
> . . . .
> So that's not my trying to keep Mr. Gaines from having a lawyer of his own choosing. If Ms. Corey was able to try the case today, I'd say, great. You're on the case. We'll send you out to trial. That would be fine with me.
> The problem is not because of me saying he can't have a lawyer of his choice. The problem is that he comes up with a lawyer of his choice on the eve of trial on a very old case.

Verbatim Report of Proceedings (VRP) (Oct. 16, 2014) at 18-19.

At trial, a forensic scientist at the Washington State Patrol Crime Laboratory, testified that the substance obtained from the informant contained methylsulfonylmethane and did not contain methamphetamine. Immediately following this testimony, the State amended its information to drop its charge of unlawful delivery of a controlled substance and add a charge of unlawful distribution of an imitation controlled substance, without objection.[2]

A records officer for the Washington State Employment Security Department testified that no employers had reported any wages for Gaines in 2012 and 2013 and that Gaines had not applied for unemployment benefits during that same period. The records officer further testified that Gaines's records would not show whether he was receiving social security disability benefits unless he applied for unemployment.

---

[2] The State's third amended information charged Gaines with unlawful distribution of an imitation controlled substance, first degree unlawful possession of a firearm, solicitation to deliver a controlled substance, solicitation to possess a controlled substance with intent to deliver, and conspiracy to deliver a controlled substance.

Defense counsel attempted to subpoena Thompson, the person who was in the backseat of Gaines's car when he was stopped, but Thompson had jumped bail and could not be located. There was a warrant out for Thompson's arrest.

During closing, the State argued:

> The evidence in this case, quite simply, in the spring and summer of 2013, Mr. Gaines chose the easy way out, without income, without a way to support himself, he chose to deal drugs.
> . . . .
> You know he's involved in large amounts of cash with no legitimate source. Unemployed, no worker's compensation, no anything, no way of supporting himself, but he's got thousands of dollars to send to Mexico. He's got [over $600] in his pocket. He's driving around in a new Dodge Charger. All of this, again, consistent with what [Gaines] tells Officer Schultz. This is how he supports himself. This is what he's doing.

VRP (Oct. 27, 2014) at 278, 286.

The jury returned verdicts finding Gaines not guilty of distribution of an imitation controlled substance and guilty of the remaining charges of first degree unlawful possession of a firearm, solicitation to deliver a controlled substance, solicitation to possess a controlled substance with intent to deliver, and conspiracy to deliver a controlled substance. The jury also returned special verdicts finding that Gaines was armed with a firearm during his commission of solicitation to deliver a controlled substance, solicitation to possess a controlled substance with intent to deliver, and conspiracy to deliver a controlled substance. The trial court dismissed Gaines's conviction of solicitation to possess a controlled substance with intent to deliver, concluding that sentencing Gaines for this conviction and his conviction of solicitation to deliver a controlled substance would violate the constitutional prohibition against double jeopardy.

Gaines appealed from his convictions, arguing in relevant part that the trial court effectively deprived him of his right to counsel of choice by denying his motion for a

5

continuance. *Gaines*, No. 46852-2-II, slip op. at *1. We disagreed, reasoning that the trial court

acted within its discretion when denying the continuance motion because of

> (1) Corey's inability to try the case within a couple of months, (2) Corey's caseload, which had many old cases, creating the possibility of prolonging the trial up to another year, (3) its concern with Gaines's co-defendant's right to a speedy trial, (4) the age of the case generally, which had received numerous continuances in the past, and (5) the prior denials of the motion for substitution.

*Id.* at *4. After we affirmed Gaines's convictions, he timely filed this personal restraint petition.

ANALYSIS

I. PERSONAL RESTRAINT PETITION STANDARD

A petitioner may request relief through a personal restraint petition when the petitioner is

under an unlawful restraint. RAP 16.4(a)-(c). "A personal restraint petitioner must prove either

a (1) constitutional error that results in actual and substantial prejudice or (2) nonconstitutional

error that 'constitutes a fundamental defect which inherently results in a complete miscarriage of

justice.'" *In re Pers. Restraint of Monschke*, 160 Wn. App. 479, 488, 251 P.3d 884 (2010)

(quoting *In re Pers. Restraint of Davis*, 152 Wn.2d 647, 672, 101 P.3d 1 (2004)). The petitioner

must prove prejudice by a preponderance of the evidence. *In re Pers. Restraint of Lord*, 152

Wn.2d 182, 188, 94 P.3d 952 (2004). In addition, the petitioner must support claims of error

with a statement of facts on which the claims are based and must identify the evidence

supporting the factual allegations. RAP 16.7(a)(2)(i); *Monschke*, 160 Wn. App. at 488. The

petitioner cannot rely solely on conclusory allegations. *Id.*

When evaluating a personal restraint petition, we ordinarily will not review issues

previously raised and resolved on direct review. *In re Pers. Restraint of Gentry*, 137 Wn.2d 378,

388, 972 P.2d 1250 (1999). Raising the same issue but presenting it in a different form does not

justify a second review. *In re Pers. Restraint of Stenson*, 142 Wn.2d 710, 719-20, 16 P.3d 1 (2001); *In re Pers. Restraint of Jeffries*, 114 Wn.2d 485, 488, 789 P.2d 731 (1990). We dismiss the petition if the petitioner fails to make a prima facie showing of constitutional or nonconstitutional error. *In re Pers. Restraint of Stockwell*, 160 Wn. App. 172, 176-77, 248 P.3d 576 (2011).

## II. INEFFECTIVE ASSISTANCE OF COUNSEL

Gaines first raises several claims of ineffective assistance, all of which either lack merit or improperly rely on conclusory allegations absent supporting evidence.

A.  <u>Ineffective Assistance Standard</u>

The Sixth Amendment to the United States Constitution and article I, section 22 of the Washington Constitution guarantee the right to effective assistance of counsel. *Strickland v. Washington*, 466 U.S. 668, 685-86, 104 S. Ct. 2052, 80 L. Ed. 2d 674 (1984); *State v. Grier*, 171 Wn.2d 17, 32, 246 P.3d 1260 (2011). To prevail on a claim of ineffective assistance, the defendant must show both that defense counsel's representation was deficient, and that the deficient representation prejudiced the defendant. *Grier*, 171 Wn.2d at 32-33. Representation is deficient if, after considering all the circumstances, the performance falls below an objective standard of reasonableness. *Id.* at 33. Prejudice ensues if there is a reasonable probability that, absent counsel's deficient performance, the results of the proceeding would have been different. *Id.* at 34. This same prejudice standard applies in the context of a personal restraint petition. *In re Pers. Restraint of Crace*, 174 Wn.2d 835, 845, 280 P.3d 1102 (2012). If either prong of the ineffective assistance of counsel test is not met, the defendant's claim fails. *Davis*, 152 Wn.2d at 673.

7

A defendant raising a claim of ineffective assistance of counsel faces a strong presumption that counsel's representation was effective. *Grier*, 171 Wn.2d at 33. Legitimate trial strategy or tactics cannot serve as the basis for a claim of ineffective assistance of counsel. *State v. Kyllo*, 166 Wn.2d 856, 863, 215 P.3d 177 (2009). Therefore, to rebut the strong presumption that counsel's representation was effective, the defendant must demonstrate that "'there is no conceivable legitimate tactic explaining counsel's performance.'" *Grier*, 171 Wn.2d at 33 (quoting *State v. Reichenbach*, 153 Wn.2d 126, 130, 101 P.3d 80 (2004)).

B.      Failure to Test Substance Before Trial

Gaines first argues that his defense counsel was ineffective for not arranging for an independent analysis of the substance alleged to be methamphetamine before trial. Even if there were deficient performance, an issue we do not decide, Gaines cannot demonstrate any resulting prejudice. Thus, this claim of ineffective assistance fails.

After a forensic scientist for the State testified that the substance was not methamphetamine, the State amended its information to drop the charge of unlawful delivery of a controlled substance and instead charged Gaines with unlawful distribution of an imitation controlled substance. And the jury ultimately acquitted Gaines of unlawful distribution of an imitation substance. Accordingly, Gaines's claim of ineffective assistance of counsel on this ground fails.[3]

---

[3] Gaines asserts for the first time in his reply brief that, had defense counsel discovered the alleged substance was not methamphetamine, defense counsel could have sought out a favorable plea agreement with the State. This assertion is based on speculation without any evidentiary support. Gaines has not identified any evidence that the State would have offered Gaines a favorable plea deal or that Gaines would have accepted such a plea deal if offered by the State had the parties known that the substance was not methamphetamine.

C.      Failure to Move to Suppress Evidence

Next, Gaines argues that defense counsel was ineffective for failing to move to suppress evidence of the controlled buy. Gaines asserts that evidence of the controlled buy was irrelevant to his charge of unlawful delivery of a controlled substance, and thus would have been suppressed, because the substance delivered in the controlled buy was not a controlled substance.

Gaines's assertion again ignores that the State ultimately dropped its unlawful delivery of a controlled substance charge. Evidence stemming from the controlled buy of an imitation controlled substance was clearly relevant to Gaines's charge of unlawful distribution of an imitation controlled substance. Accordingly, Gaines fails to demonstrate ineffective assistance of counsel on this ground.

Gaines also argues that defense counsel was ineffective for failing to object to testimony that the cash found on his person after his arrest could have been related to illicit drug transactions with people in Mexico. Gaines asserts that such testimony was purely speculative because there was no evidence presented connecting him to illicit drug transactions. This assertion is meritless because the evidence at trial showed Gaines admitted to police that he was dealing methamphetamine, he was a drug runner for people in Mexico, he recently wired "money to Mexico for the dope man," and he was supposed to pick up "two pounds." VRP (Oct. 22, 2014) at 62, 65. Gaines argues that his statement regarding picking up "two pounds" was vague and could have referred to a legal substance. Given that the reference to "two pounds" was made in the context of other statements regarding illegal drug transactions, a jury could reasonably infer that "two pounds" related to a controlled substance.

9

Because a jury could reasonably infer that the cash discovered on Gaines's person related to illicit drug transactions given Gaines's admissions to police, he cannot show that an objection would have been sustained. As a result, his ineffective assistance of counsel claim on this ground fails. *State v. Johnston*, 143 Wn. App. 1, 20, 177 P.3d 1127 (2007).

D.      Failure to Present Evidence of Legal Sources of Income

Next, Gaines argues that his defense counsel was ineffective for failing to present evidence that he had legal sources of income, which could have weakened the State's argument that he likely obtained the cash found on his person, his new car, and the money to transfer to Mexico through illegal drug transactions. In support of this argument, Gaines attached to his petition two paystubs from 2008 and 2009 showing he received income during that period. Gaines also attached to his reply brief, bank account statements showing that disability payments were deposited into Gaines's account in December 2013 and in 2014.

Proof of legal income in 2008 and 2009 would not undermine the State's argument that Gaines did not have a legal source of income when he was arrested in 2013. Evidence of Gaines's disability payments in December 2013 and in 2014 similarly fail to show that Gaines had a legal source of income when he was arrested in June 2013. Accordingly, even if this evidence were presented to the jury, there is no reasonable probability that the outcome would have been different. Gaines's claim of ineffective assistance of counsel on this ground fails.

E.      Failure to Subpoena Witness

Next, Gaines argues that his defense counsel was ineffective for failing to subpoena Richard Thompson to testify at trial. But Gaines's defense counsel attempted to subpoena Thompson, he was just unsuccessful because Thompson jumped bail and a process server could

not locate him at his home. Because defense counsel attempted to subpoena Thompson to testify at trial, Gaines fails to show deficient performance on this basis, and thus, he fails to demonstrate ineffective assistance of counsel on this ground.

### III. RIGHT TO COUNSEL

Next, Gaines claims that the trial court violated his right to counsel of his choosing by not allowing him to address the court pro se at the October 16, 2014 hearing on his motion to substitute counsel.[4] Gaines's argument on this issue is insufficient to warrant judicial consideration. He does not cite any authority supporting the proposition that a trial court is constitutionally required to permit a defendant to make pro se arguments when addressing a motion to substitute counsel, let alone that a trial court must sua sponte inquire whether the defendant wants to raise pro se arguments. *See In re Pers. Restraint of Williams*, 111 Wn.2d 353, 365, 759 P.2d 436 (1988) ("naked castings into the constitutional sea are not sufficient to command judicial consideration and discussion.") (quoting *In re Pers. Restraint of Rosier*, 105 Wn.2d 606, 616, 717 P.2d 1353 (1986)) (internal quotations omitted).

Finally, Gaines claims that his defense counsel was ineffective for failing to ask the trial court to permit Gaines to address the court pro se. But Gaines has not presented an affidavit stating that he communicated to counsel his desire to address the court or explaining what arguments he would have raised. Gaines also fails to present any argument about how the outcome of the trial court's ruling would have differed had he addressed the trial court pro se at

---

[4] Gaines cannot relitigate the issue of whether the trial court abused its discretion when it denied his motion for a continuance to allow for the substitution of counsel because we addressed that issue on its merits on direct appeal. *Gaines*, No. 46852-2-II, slip op at 193 Wn. App. 1044.

No. 51871-6-II

this hearing. Therefore, Gaines fails to show either deficient performance or resulting prejudice, and thus, his ineffective assistance of counsel claim fails.

Accordingly, Gaines fails to show he is unlawfully restrained, and we deny his petition.

A majority of the panel having determined that this opinion will not be printed in the Washington Appellate Reports, but will be filed for public record in accordance with RCW 2.06.040, it is so ordered.

Glasgow, J.

We concur:

Melnick, P.J.

Sutton, J.