# IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

# DIVISION II

| | |
|---|---|
| In the Matter of the Personal Restraint of: | No. 52662-0-II |
| LAWRENCE DIESE, | |
| Petitioner. | UNPUBLISHED OPINION |

GLASGOW, J.—Lawrence Diese was convicted of second degree rape for raping NB, Diese's girlfriend's 20-year-old daughter. The State's DNA evidence was inconclusive, so the State rested its case on NB's testimony and an audio recording of the incident that NB made on her phone.

Diese filed this timely personal restraint petition, arguing that he received ineffective assistance of counsel because his trial counsel failed to call an expert DNA witness or an expert forensic audio witness. We reject both arguments. Even if counsel acted deficiently, an issue we need not decide, Diese has not shown that he was prejudiced.

We dismiss the petition.

## FACTS

In 2008, Diese began dating Juline Dual, NB's mother. Dual and NB moved in with Diese and his daughter in their house in Vancouver soon thereafter, when NB was 14 years old.

Diese and Dual's relationship became rocky, culminating in an incident when Diese became angry, grabbed NB by the scruff of her neck or the hood of her jacket, threw her out the front door, and then dragged Dual out the door by her hair. Dual and NB later moved out. Over the next few years Diese and Dual had an on-again, off-again relationship. Sometime in 2012, NB

told Dual that Diese had raped her back when they were living with him in Vancouver, but Dual did not believe her daughter at that time. Dual told Diese about the accusation.

In May 2013, Dual moved back in with Diese. Later in 2013, NB asked if she could move in with Dual and Diese because she had run out of housing options. Dual and Diese agreed to let NB, now 20 years old, move back in if she agreed to some rules, including that NB had to pick up after herself, go to counseling, and get a job. As part of this agreement, NB was also not allowed to be at the house with Diese if Dual was gone.

One day, Diese told Dual that he was fed up with NB and that she needed to leave. The three of them talked, and then Diese told NB that if she wanted to stay at the house she would have to do everything that he said without argument. NB agreed.

Dual left Diese and NB alone while she went to rent some movies for them to watch together that night. NB was sitting on the couch watching TV. NB testified that she was uncomfortable being alone at the house with Diese because he had raped her the last time they had been home alone together several years earlier. NB turned on her phone and started recording.

While the cell phone was recording, Diese told NB that it was time for her to live up to her word. NB replied that she had done all of her chores, and Diese responded that she had not done everything he wanted. NB testified that Diese then demanded that she pull down her pants, and when she refused, he pulled them down and raped her.

A few days later, NB confronted Dual and told her: "I told you he was raping me." 4 Verbatim Report of Proceedings (VRP) at 363. NB played the recording for Dual, and then the two of them went to NB's counselor and played the recording for her. The counselor then called

the police. NB and Dual went to the police department and then to the hospital for a sexual assault examination. The police arrested Diese and ultimately charged him with second degree rape.

At trial, NB and Dual testified consistently with the facts described above. The State moved to admit a recording of the recording that NB made during the incident. Detective Sandra Aldridge testified that she had been unsuccessful in using the police's Cellebrite software to download files off NB's phone. Instead she played NB's recording from NB's phone while recording with another device. Diese objected to admission of the recording based on lack of foundation and failure to adequately establish authenticity. NB laid foundation explaining that the recording accurately depicted what happened. The trial court then overruled the objection, admitted the recording, and allowed the State to play it for the jury.

On the recording, Diese threatened NB that she had nowhere to go and that he could do whatever he wanted. NB told Diese that he should be doing those things with her mom because Diese was Dual's boyfriend. Diese then counted to three and told NB to "[d]rop them" and come with him. 1 VRP at 35-36; 3 VRP at 270-71.[1]

Also testifying at trial were Chaleen Destephano, the sexual assault nurse who examined NB, Trevor Chowen, the DNA forensic scientist, and Brad Dixon, one of the DNA section supervisors for the Washington State Patrol Vancouver Crime Laboratory. Destephano testified that she found a hematoma just below NB's vaginal opening, which was consistent with NB's description of the rape. On cross-examination, Destephano acknowledged that the exam was

---

[1] The report of proceedings contains more than one transcription of the audio recording. The jury heard the recording played multiple times. *See also* 9 VRP at 982, 996.

performed four days after the incident and that there could have been other causes for the hematoma. Destephano also collected swabs from NB.

Chowen explained the process of testing for DNA profiles and testified that he conducted that process on all of NB's clothes and the swabs collected by Destephano, but he did not find any male DNA. Chowen testified that this was not uncommon and the delay in collecting NB's clothing could have been a factor. On cross-examination Chowen acknowledged that his findings could also be consistent with the absence of any rape.

Dixon also conducted tests of swabs and other material collected during NB's sexual assault exam. He testified that the negligible amount of male DNA found was insufficient to develop a DNA profile. Dixon admitted on cross-examination that he was unable to draw any conclusions from the samples he tested.

Diese denied that he raped NB and claimed that NB made the recording and accused him of rape to get her mother to break up with him. He testified that everything he said on the recording was in the context of getting NB to do her chores. Referring to the recording that had been played for the jury, Diese said that when he said, "drop them," he was referring to a cat that NB had on her lap. 8 VRP at 826. He also claimed that he told NB "'[y]our pants are halfway down'" because her pants were hanging down when she got up to go to the bathroom. *Id.* at 810.

During closing argument, the State acknowledged the lack of conclusive DNA evidence and instead focused on the recording: "This case is not about DNA analysis. It's not about the [sexual assault] examination. It's about this recording right here." 9 VRP at 938.

In closing argument, defense counsel discussed at length the lack of DNA evidence and explained how the testimony of the State's expert witnesses was consistent with a finding that

Diese never raped NB. Defense counsel also argued that Diese's statements in the recording were taken out of context and that they were all consistent with Diese's claim that he was simply trying to get NB to do her chores. Counsel highlighted the inherent limitations of audio recordings in that they do not always capture the whole story.

The jury found Diese guilty of second degree rape and found that it was a domestic violence offense, that it was part of an ongoing pattern of abuse, and that Diese's conduct manifested deliberate cruelty or intimidation. Based on the jury's findings, the court sentenced Diese to an exceptional sentence of 129 months.

Diese appealed his conviction, and we affirmed in an unpublished opinion. *State v. Diese*, http://www.courts.wa.gov/opinions/pdf/D2%2047432-8-II%20Unpublished%20Opinion.pdf. Diese timely filed this personal restraint petition.

## ANALYSIS

Diese argues he received ineffective assistance of counsel because his counsel did not call certain expert witnesses to rebut the State's evidence. We disagree.

A.      Burden to Prove Relief from Restraint Is Warranted

A petitioner may request relief through a personal restraint petition when the petitioner is under an unlawful restraint. RAP 16.4(a)-(c). "A personal restraint petitioner must prove either a (1) constitutional error that results in actual and substantial prejudice or (2) nonconstitutional error that 'constitutes a fundamental defect which inherently results in a complete miscarriage of justice.'" *In re Pers. Restraint of Monschke*, 160 Wn. App. 479, 488, 251 P.3d 884 (2010) (internal quotation marks omitted) (quoting *In re Pers. Restraint of Davis*, 152 Wn.2d 647, 672, 101 P.3d

1 (2004)). The petitioner must prove prejudice by a preponderance of the evidence. *In re Pers. Restraint of Lord*, 152 Wn.2d 182, 188, 94 P.3d 952 (2004).

The petitioner must support claims of error with a statement of facts on which the claims are based and must identify the evidence supporting the factual allegations. RAP 16.7(a)(2)(i); *Monschke*, 160 Wn. App. at 488. The petitioner cannot rely solely on conclusory allegations. *Monschke*, 160 Wn. App. at 488. If the petitioner's allegations are based on matters outside the existing record, they must demonstrate competent, admissible evidence to establish the facts that entitle them to relief. *In re Pers. Restraint of Rice*, 118 Wn.2d 876, 886, 828 P.2d 1086 (1992).

Where a petitioner relies on the knowledge of others, the petitioner must present a declaration or other corroborative evidence, rather than merely speculating about what that person might say. *Id*. The declarant must establish that the person can competently testify about the subject matter discussed in the declaration. *Id.*

In evaluating personal restraint petitions, we may dismiss the petition if the petitioner fails to make a prima facie showing of constitutional or nonconstitutional error and prejudice. *In re Pers. Restraint of Stockwell*, 160 Wn. App. 172, 176-77, 248 P.3d 576 (2011).

B.      Ineffective Assistance of Counsel

The Sixth Amendment to the United States Constitution and article I, section 22 of the Washington Constitution guarantee effective assistance of counsel. *State v. Grier*, 171 Wn.2d 17, 32, 246 P.3d 1260 (2011). To demonstrate that he received ineffective assistance of counsel, Diese must show both (1) that defense counsel's performance was deficient and (2) that the deficient performance resulted in prejudice. *State v. Linville*, 191 Wn.2d 513, 524, 423 P.3d 842 (2018). Because both prongs of the ineffective assistance of counsel test must be met, the failure to

demonstrate either prong will end our inquiry. *State v. Classen*, 4 Wn. App. 2d 520, 535, 422 P.3d 489 (2018). Prejudice ensues if there is a reasonable probability that the result of the proceeding would have been different had defense counsel not performed deficiently. *State v. Estes*, 188 Wn.2d 450, 458, 395 P.3d 1045 (2017). The same prejudice standard for ineffective assistance of counsel applies in the context of a personal restraint petition as in a direct appeal. *In re Pers. Restraint of Crace*, 174 Wn.2d 835, 845, 280 P.3d 1102 (2012).

Diese raises two claims of ineffective assistance of counsel. First, he argues that his trial counsel rendered ineffective assistance when she failed to call an expert witness to discuss the DNA evidence. Second, Diese argues that defense counsel was ineffective for failing to call an expert witness to discuss Aldridge's recording of the cell phone recording that NB made. We reject both claims.

Even assuming without deciding that counsel was deficient for not retaining these experts, Diese has not shown he was prejudiced because he does not present any evidence of what these experts would have said at trial or explain how such testimony would have changed the outcome. Diese may not simply state what he thinks his potential expert witnesses would say, but must present their declarations or other corroborative evidence. *Rice*, 118 Wn.2d at 886. Without such evidence, any analysis of prejudice would be speculative. *In re Pers. Restraint of Davis*, 188 Wn.2d 356, 376, 395 P.3d 998 (2017).

Diese alleges that expert testimony on the prevalence of "touch DNA" in rape cases would have been useful to explain the significance of the absence of his DNA on NB's clothing, without further explanation. Personal Restraint Pet. at 18. But he presents no evidence of what another

DNA expert witness would have said that could have changed the outcome of his trial. Thus, any evaluation of prejudice would be highly speculative. *Davis*, 188 Wn.2d at 376.

Moreover, the DNA experts who actually analyzed NB's swabs and clothing testified that they were unable to detect any male DNA on NB's clothing, the amount of male DNA in her sexual assault examination was so small that it could not be further analyzed, their results were inconclusive, and their results were also consistent with no rape having occurred. Indeed the State expressly argued to the jury that "[t]his case is not about DNA analysis," and instead relied heavily on NB's testimony and the recording. 8 VRP at 938. Thus, it is doubtful that further testimony on the DNA issue would have changed the minds of the jurors. We hold that the lack of a DNA expert defense witness did not prejudice Diese.

Nor has Diese presented any evidence of what an audio expert would have said at trial or how it would have changed the outcome. Diese reasons that a forensic audio expert "could have ascertained whether the recording had been altered" or "could have discussed the Cellebrite software in greater detail" so that the jury could "place what weight it deemed appropriate on the evidence." Personal Restraint Pet. at 21. But Diese may not simply state what he thinks his potential forensic audio expert might say; he must present their declaration or other corroborative evidence. *Rice*, 118 Wn.2d at 886. Without such evidence, any analysis of prejudice would be speculative. *Davis*, 188 Wn.2d at 376.

Furthermore, the overall strength of defense counsel's performance in handling the recording issue cuts against Diese's claim that a forensic audio expert would have changed the outcome of the trial. Counsel raised a vigorous objection to the admission of Aldridge's recording, cross-examined Aldridge on how she made it, and made the case to the jury that it should draw a

52662-0-II

different conclusion from the recording that Diese was simply trying to get NB to do her chores. Diese has made no showing of how expert witness testimony on this subject would have changed the minds of the jurors. We therefore hold that he was not prejudiced.

CONCLUSION

Because Diese has not made a prima facie showing of prejudice, we dismiss his personal restraint petition.

A majority of the panel having determined that this opinion will not be printed in the Washington Appellate Reports, but will be filed for public record in accordance with RCW 2.06.040, it is so ordered.

Glasgow, J.

We concur:

Maxa, P.J.

Sutton, J.