**NOTICE:   SLIP OPINION**
**(not the court's final written decision)**

The opinion that begins on the next page is a slip opinion.  Slip opinions are the written opinions that are originally filed by the court.

A slip opinion is not necessarily the court's final written decision.  Slip opinions can be changed by subsequent court orders.  For example, a court may issue an order making substantive changes to a slip opinion or publishing for precedential purposes a previously "unpublished" opinion.  Additionally, nonsubstantive edits (for style, grammar, citation, format, punctuation, etc.) are made before the opinions that have precedential value are published in the official reports of court decisions: the Washington Reports 2d and the Washington Appellate Reports.  An opinion in the official reports replaces the slip opinion as the official opinion of the court.

**The slip opinion that begins on the next page is for a published opinion, and it has since been revised for publication in the printed official reports.**  The official text of the court's opinion is found in the advance sheets and the bound volumes of the official reports.  Also, an electronic version (intended to mirror the language found in the official reports) of the revised opinion can be found, free of charge, at this website: https://www.lexisnexis.com/clients/wareports.

For more information about precedential (published) opinions, nonprecedential (unpublished) opinions, slip opinions, and the official reports, see https://www.courts.wa.gov/opinions and the information that is linked there.

For the current opinion, go to https://www.lexisnexis.com/clients/wareports/.

**IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON**

**DIVISION II**

| | |
|---|---|
| In the Matter of the Personal Restraint of<br><br>NATHANIAL SAMY ALLEN SYLVESTER,<br><br>Petitioner. | No. 56001-1-II<br>(consolidated with No. 56005-4-II<br>and No. 56011-9-II)<br><br><br>PUBLISHED OPINION |

GLASGOW, C.J.—Nathanial Samy Allen Sylvester pointed a gun at his girlfriend, gave a fake name to avoid arrest, and spat on a correctional officer. In 2019, Sylvester pleaded guilty to criminal impersonation, custodial assault, third degree assault, and unlawful possession of a firearm under three separate cause numbers. The parties agreed to recommended sentences that would impose the bottom of the standard range for each crime, but Sylvester would serve the sentences consecutively, making the sentence an exceptional one.

Sylvester's offender score for each charge included 1 point for a prior conviction for possession of a controlled substance. The prior possession conviction is now void under *State v. Blake*, 197 Wn.2d 170, 481 P.3d 521 (2021). More than one year after his judgment and sentences became final, Sylvester filed three CrR 7.8 motions seeking resentencing using corrected offender scores. The trial court transferred them to this court as personal restraint petitions (PRPs).

Sylvester argues the trial court should have granted the CrR 7.8 motions instead of transferring them. The State contends Sylvester's PRPs are time barred, he cannot establish prejudice, and, even if we were to remand, he has breached his plea agreement.

No. 56001-1-II

We hold that Sylvester's CrR 7.8 motions were not time barred and that he is entitled to relief. We grant Sylvester's PRPs and remand for resentencing. On remand, the State may ask the trial court to first determine whether Sylvester breached his plea agreement.

FACTS

When he pleaded guilty in 2019, Sylvester's criminal history included two convictions that were "strike" offenses at the time—second degree robbery and second degree assault. In September 2019, to avoid risking conviction for a third "strike" offense of second degree assault, which would result in a mandatory life sentence, Sylvester pleaded guilty to criminal impersonation, custodial assault, third degree assault, and first degree unlawful possession of a firearm in a global plea agreement spanning three cause numbers.[1]

Sylvester's offender score was 7 points for each charge, and it included 1 point for a prior conviction for possession of a controlled substance. The standard range for both custodial assault and third degree assault was 33 to 43 months, and the standard range for first degree unlawful possession of a firearm was 67 to 89 months. The criminal impersonation charge was an unranked felony with a standard range of 0 to 365 days. Sylvester stipulated to a plea agreement where the State agreed to recommend a sentence at the bottom of the standard range for each charge, including zero days for the impersonation charge. But the sentences would run consecutively, for

---

[1] Second degree robbery is no longer a "'most serious offense'" that can be used to support a persistent offender sentence. LAWS OF 2019, ch. 187, § 1 (removing second degree robbery from the list of "'most serious offenses'" in former RCW 9.94A.030(33)(o) (2018)). Now, no conviction for second degree robbery can be used as a basis for finding that a defendant is a persistent offender, regardless of when the defendant committed the offense. RCW 9.94A.647(3).

No. 56001-1-II

a total exceptional upward sentence of 133 months. The plea agreement stated that if Sylvester appealed or filed a CrR 7.8 motion, that would constitute a breach of the plea agreement.

During the plea colloquy, the trial court told Sylvester the standard ranges for his charges, explaining that the ranges were "all based on an offender score of [7]," and the State could seek an increased sentence if it later discovered additional criminal history. Verbatim Report of Proceedings (Sept. 18, 2019) at 32. The trial court accepted Sylvester's guilty plea, finding it knowing, voluntary, and intelligent.

The trial court followed the plea agreement, imposing low-end sentences but requiring Sylvester to serve them consecutively. The trial court imposed a total term of confinement of 133 months, an exceptional sentence. The trial court found that Sylvester and the State were "in agreement as to a recommended sentence above the standard range, and further that it is in the interest of justice to order an exceptional sentence above the standard range." Clerk's Papers (CP) at 70, 119, 140. Sylvester's judgment and sentences were entered in September 2019. He did not appeal.

In February 2021, the Washington Supreme Court held that Washington's strict liability drug possession statute was unconstitutional. *Blake*, 197 Wn.2d at 195. In July 2021, Sylvester filed three identical CrR 7.8 motions, one for each cause number, arguing that he was entitled to resentencing under an offender score that did not include the now-void simple possession conviction. The trial court found that although the CrR 7.8 motions were not barred by the one-year time limit in RCW 10.73.090, Sylvester had "not made a substantial showing that [he] is entitled to relief or that an evidentiary hearing will be necessary to resolve the motion on the

3

No. 56001-1-II

merits." CP at 148. The trial court transferred the motions to this court as PRPs. This court consolidated the three cause numbers.

## ANALYSIS

We may dismiss a PRP if the petitioner fails to make a prima facie showing of error, remand for a reference hearing "if the petitioner makes a prima facie showing but the merits of the contentions cannot be determined solely from the record," or "grant the PRP without further hearing if the petitioner has proved actual prejudice or a miscarriage of justice." *In re Pers. Restraint of Stockwell*, 160 Wn. App. 172, 177, 248 P.3d 576 (2011).

### I. TIME BAR

RCW 10.73.090(1) provides, "No petition or motion for collateral attack on a judgment and sentence in a criminal case may be filed more than one year after the judgment becomes final if the judgment and sentence is valid on its face and was rendered by a court of competent jurisdiction." The time bar does not apply if a petitioner's judgment and sentence is facially invalid. *In re Pers. Restraint of Weber*, 175 Wn.2d 247, 255, 284 P.3d 734 (2012). "A reviewing court may use the documents signed as part of a plea agreement to determine facial invalidity if those documents are relevant in assessing the validity of the judgment and sentence." *In re Pers. Restraint of McKiearnan*, 165 Wn.2d 777, 781-82, 203 P.3d 375 (2009).

Sylvester argues that the one-year time bar in RCW 10.73.090 does not apply because Washington's simple possession statute has been held unconstitutional, rendering his judgment and sentences facially invalid because they contain an incorrect offender score.[2] The State

---

[2] Sylvester also argues RCW 10.73.090's "one-year time limit 'does not apply' when 'the statute that the defendant was convicted of violating was unconstitutional.'" Suppl. Br. of Pet'r at 10

4

No. 56001-1-II

responds that a judgment and sentence is not invalid on its face where the trial court imposes "an appropriate sentence within what would have been a correct sentencing range." Resp. to PRP at 11. The State argues that the trial court did not exceed its sentencing authority because Sylvester stipulated to the exceptional sentence and "a 133-month sentence could still be imposed by running each of the counts consecutively at a different point within the standard sentencing range." *Id.* at 14.

A conviction based on an unconstitutional statute cannot be included in an offender score, even if the defendant agreed to a guilty plea with a sentencing recommendation based on the incorrect offender score. *State v. LaBounty*, 17 Wn. App. 2d 576, 581-82, 487 P.3d 221 (2021). The offender score is facially a part of the judgment and sentence. *In re Pers. Restraint of Goodwin*, 146 Wn.2d 861, 867, 50 P.3d 618 (2002). An excessive sentence based on an improperly calculated offender score in a negotiated plea agreement will render a judgment and sentence facially invalid. *Id.* at 869-70.

The State relies on *In re Personal Restraint of Toledo-Sotelo*, 176 Wn.2d 759, 297 P.3d 51 (2013), to argue that Sylvester's judgment and sentence is not facially invalid because Sylvester stipulated to the exceptional sentence and the trial court could impose the same sentence with a corrected offender score by keeping the sentence for criminal impersonation at zero days, imposing the high end of the correct standard range for the other offenses, and running the sentences consecutively. Toledo-Sotelo received a standard-range sentence based on an offender score of 3

_____

(quoting RCW 10.73.100(2)). But this petition addresses Sylvester's sentences for custodial assault, unlawful possession of a firearm, third degree assault, and criminal impersonation—not simple possession. None of the crimes Sylvester pleaded guilty to in these cases has been declared unconstitutional since his guilty plea.

5

No. 56001-1-II

and an offense seriousness level of XII; his offender score should have been 4 and the offense seriousness level X. *Toledo-Sotelo*, 176 Wn.2d at 765, 767. The Supreme Court explained that the judgment and sentence remained valid because "the trial court coincidentally used the sentencing range that resulted from the correct offender score and seriousness level" and sentenced Toledo-Sotelo in the middle of that standard range. *Id.* at 761.

The *Toledo-Sotelo* court distinguished both *Goodwin* and *In re Personal Restraint of Johnson*, 131 Wn.2d 558, 933 P.2d 1019 (1997). It explained that in *Johnson*, the trial court sentenced the defendant to the bottom of an incorrectly calculated standard range, rendering the judgment and sentence facially invalid, and the Supreme Court remanded for resentencing "[b]ecause there was evidence in the record that the court intended to sentence the petitioner to the minimum sentence within the standard range." *Id.* at 769. In *Goodwin*, the defendant pleaded guilty and agreed to an incorrect offender score containing washed out juvenile convictions. 146 Wn.2d at 867. Despite the negotiated plea agreement, the Supreme Court held that the incorrect offender score rendered the judgment and sentence facially invalid because Goodwin's "sentence is as a matter of law in excess of what is statutorily permitted for his crimes given a correct offender score." *Id.* at 875-76. These cases were distinct from *Toledo-Sotelo*, where the errors were "technical misstatements," because there was "nothing to suggest that the trial court would have sentenced Toledo-Sotelo differently if it had had the proper offender score (4) and seriousness level (X) at sentencing." 176 Wn.2d at 768-69.

This case bears more resemblance to *Goodwin* and *Johnson* than to *Toledo-Sotelo*. Here, although Sylvester stipulated to the exceptional sentence, that sentence was based on an incorrectly calculated offender score. Sylvester was sentenced to the bottom of the standard range for each

6

No. 56001-1-II

charge based on the offender score, and the trial court imposed these sentences consecutively instead of concurrently. Had the trial court used offender scores of 6 points instead of 7, the standard range for custodial assault would have been 22 to 29 months, the standard range for unlawful possession of a firearm would have been 57 to 75 months, and the standard range for third degree assault would have been 22 to 29 months. The bottom of the standard range for criminal impersonation would have remained at zero days. Consecutive low-end sentences for each crime would have amounted to 101 months of confinement—32 months less than the sentence Sylvester received.

There is evidence in this record that the trial court would not have imposed an identical sentence with a lower offender score and lower standard ranges because the bottom of each sentencing range would have been different. Thus, Sylvester's judgment and sentences are facially invalid, and the trial court was correct to conclude that his CrR 7.8 motions were not time barred under RCW 10.73.090.[3]

## II. FUNDAMENTAL DEFECT AND PREJUDICE

A personal restraint petitioner seeking relief from a nonconstitutional error must demonstrate by a preponderance of the evidence "'a fundamental defect which inherently results in a complete miscarriage of justice.'" *In re Pers. Restraint of Swagerty*, 186 Wn.2d 801, 807, 383 P.3d 454 (2016) (internal quotation marks omitted) (quoting *In re Pers. Restraint of Cook,* 114 Wn.2d 802, 811, 792 P.2d 506 (1990)).

---

[3] Sylvester also raises *State v. Fletcher*, 19 Wn. App. 2d 566, 497 P.3d 886 (2021), but we find it unnecessary to rely on that case.

7

No. 56001-1-II

Sylvester argues that the incorrect offender score in his judgment and sentences is a fundamental defect resulting in a complete miscarriage of justice. The State responds that Sylvester cannot demonstrate prejudice from the erroneous offender score because he stipulated to the offender score in the negotiated plea agreement. It also argues that the record "does not *establish* that the trial court would have imposed a different sentence had the standard range been properly calculated." Suppl. Resp. to PRP at 9.

Both unlawful sentences and sentences based on miscalculated offender scores are fundamental defects that result in "a complete miscarriage of justice," and the remedy is remand for resentencing under a corrected offender score. *Goodwin*, 146 Wn.2d at 876; *In re Pers. Restraint of Carrier*, 173 Wn.2d 791, 818, 272 P.3d 209 (2012). This is true even when the sentence is "within the correct standard range, if the trial court had indicated its intent to sentence at the low end of the range, and the low end of the correct range is lower than the low end of the range determined by using the incorrect offender score." *Goodwin*, 146 Wn.2d at 868.

Although Sylvester pleaded guilty and stipulated to an exceptional sentence, the result was four consecutive sentences, each at the bottom of the standard range, including one for zero days. As discussed above, sentencing Sylvester in the same manner with the corrected offender score would reduce his term of confinement by 32 months. Reducing the offender score would lower the bottom of the standard range for each conviction, and the low end of the range was a central factor in the negotiated plea agreement and the trial court's sentence. There is evidence that the trial court would not have sentenced Sylvester to the same term of confinement with a corrected offender score. Thus, Sylvester has demonstrated the necessary prejudice. The incorrect offender score was a fundamental defect resulting in a complete miscarriage of justice. Because Sylvester has

No. 56001-1-II

demonstrated a complete miscarriage of justice, we grant his PRPs and remand to the trial court for resentencing.

### III. EFFECT ON SYLVESTER'S PLEA AGREEMENT

Sylvester's plea agreement stated that filing a CrR 7.8 motion would breach the agreement. "In order to vacate a guilty plea on the basis of a defendant's breach of the plea agreement, the State must establish the breach in a hearing" before a trial court. *State v. Malone*, 138 Wn. App. 587, 592, 157 P.3d 909 (2007).

In the event that "remand for resentencing renders the plea agreement invalid," Sylvester concedes this "'place[s] the parties back in the position they were in before they entered into the agreement.'" Suppl. Br. of Pet'r at 31-32 (alteration in original) (quoting *In re Pers. Restraint of Thompson*, 141 Wn.2d 712, 730, 10 P.3d 380 (2000)). He acknowledges that the State "may, if appropriate, seek a ruling by the trial court that Sylvester is in breach of his plea agreement." Reply Br. of Pet'r at 3. The State similarly asks this court for an opportunity to argue breach of the plea agreement on remand.

The trial court has not yet determined whether Sylvester breached his plea by seeking resentencing. We agree with the parties that the State may seek such a hearing before the trial court to resolve this question on remand.[4]

---

[4] With regard to the effect on Sylvester's plea agreement, the State argued only that Sylvester breached his plea agreement. It did not argue he waived the ability to collaterally attack his sentence.

No. 56001-1-II

CONCLUSION

Sylvester's CrR 7.8 motions were not time barred, and he is entitled to relief. We grant Sylvester's PRPs and remand for resentencing. On remand, the State may ask the trial court to first determine whether Sylvester has breached his plea agreement.

Glasgow, C.J.

We concur:

Worswick, J.P.T.

Price, J.